Barbara BLAU, Ram Blau, Ann Mayo, and Richard Lindgren, individually and on behalf of all other former employees of Del Monte Snacks, Inc., similarly situated, Plaintiffs-Appellants,

v.

DEL MONTE CORPORATION, etc., R.J. Reynolds Industries, Inc., etc., Del Monte Snacks, Inc., etc., Defendants-Appellees.

No. 83–2622.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 3, 1984.

Decided Dec. 5, 1984.

As Amended March 5, 1985.

John J. Vlahos, Hanson, Bridgett, Marcus, Vlahos & Stromberg, San Francisco, Cal., for plaintiffs-appellants.

David Rotman, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendants-appellees.

Before DUNIWAY, FERGUSON and NELSON, Circuit Judges.

FERGUSON, Circuit Judge:

Plaintiffs, nonunion salaried employees of Granny Goose Foods, Inc. ("Granny Goose"), appeal the district court's grant of summary judgment in favor of Del Monte Corporation and others ("Del Monte"), in an action seeking benefits under an employee welfare plan when the employer's business is sold as an ongoing concern, where the employer has pervasively violat-

ed the mandates of the Employee Retirement Income Security Act of 1974 ("ERISA"). We conclude that the district court erred in holding that Del Monte's denial of severance benefits to plaintiffs was not arbitrary and capricious, and thus incorrectly granted defendants summary judgment. Plaintiffs did not move for summary judgment, so we need not decide whether Del Monte's denial of benefits was arbitrary and capricious as a matter of law.

## I. Factual and Procedural Background

In 1966, Del Monte purchased Granny Goose, which became a wholly owned subsidiary of Del Monte. Employees of Granny Goose were eligible for coverage under various pension and benefit plans of Del Monte, including Del Monte's written—but confidential—"Separation Allowance Policy." This policy was in effect at the time Granny Goose was sold as an ongoing business and is the subject of this action. The policy reads as follows:

CONFIDENTIAL (DISTRIBUTION *ONLY* TO CORPORATE OFFICERS AND CORPORATE EMPLOYEE RELATIONS STAFF MANAGERS)

SEPARATION ALLOWANCE POLICY

*Objective*
This policy is established to provide a flexible and general guide for management in determining appropriate separation allowances for employees whose positions are eliminated as a result of reorganization, consolidation, or elimination of operations to which they have been assigned and for whom appropriate alternative employment opportunities are unavailable within the Corporation.

*Eligibility*
Subject to the limitations outlined herein, separation allowances may be payable to any terminated full-time regular employee. Employees subject to Union-negotiated termination allowance programs are not eligible.

Separation allowances are *not* payable
— to employees who have been discharged for cause
— to employees who have refused transfer to suitable positions of approximately equal pay offered to them by the Corporation.

*Amounts of Separation Allowances*

The schedule attached represents an acceptable standard which has been usefully applied in the past. In the case of previous, simultaneous multiple terminations, it has customarily been offered on a uniform basis to all affected employees regardless of benefits available to them from other Corporation plans such as the Retirement and Savings-Investment Plans. However, all circumstances pertaining to each case, including any retirement and Social Security benefits available should be taken into account in determining the amount of separation allowance, if any.

Depending upon management's judgment of the merits of each case and the individual circumstances of the employee involved, the suggested amounts may be decreased, or increased up to 25%, on the recommendation of the appropriate organization head with executive approval as indicated in the succeeding paragraph.

*Authorities for Approval*

On recommendation of the appropriate organization head with the concurrence of the corporate Employee Relations Department, individual separation allowances up to 125% of the schedule may be approved by the Chairman of the Board, President, Executive Vice President, or the Group Vice President to whom the organization unit affected reports.

Allowances in excess of 125% of the schedule may be approved upon recommendation of the appropriate Group Vice President with the concurrence of the Chairman of the Board or President, and the Vice President, Employee Relations.

*Payment*

At the option of the Corporation, separation allowances may be paid in a single sum or in installments.

*Extended Health Benefits*

Employees terminated under this program may continue their coverage under the lay-off provisions of the Group Health Plan for regular employees. (Regular rate schedule for 3 months plus employee pay-all rate schedule for up to 8 additional months.) Thereafter, they may convert to individual coverage as offered by The Equitable.

Employees who are eligible for retirement and are considered retired by the Corporation may convert to a retired status under the Retired Group Health Plan at any time following termination but before the conclusion of the 11-month period above.

(Schedule not reprinted.)

Plaintiffs, a class of former nonunion salaried employees of Granny Goose, did not obtain a copy of this written separation policy until after this action was filed. Del Monte neither published the policy nor informed plaintiffs of its existence, contents or terms. Only corporate officers and corporate employee relations staff managers had access to the document.

In 1975, several years before the Separation Allowance Policy was revised to its present form, Del Monte decided either to close or sell Granny Goose. In June 1980, Del Monte announced it was actively seeking to sell Granny Goose as an ongoing concern. A group of private investors purchased the business effective December 13, 1980.

With the exception of four employees who were transferred to the Del Monte payroll, all salaried, nonunion employees of Granny Goose as of December 12, 1980 commenced working for Granny Goose (under its new ownership) on December 13, 1980 with similar responsibilities and similar rates of pay, but somewhat different benefits.

On October 14, 1982, plaintiffs demanded their rights to severance benefits from Del Monte. Del Monte never responded, and on November 18, 1982, plaintiffs filed this action in state court. Their complaint consisted of seven causes of action, one of which arose under a federal theory of liability, ERISA. 29 U.S.C. § 1132(e)(1).

Defendants removed the action to federal district court pursuant to 28 U.S.C. § 1441 and answered the complaint. Thereafter, defendants moved for partial summary judgment on plaintiffs' first, second, third, fourth, fifth and seventh causes of action, alleging that ERISA preempted these state law claims. The district court dismissed those causes of action.

Plaintiffs then filed a demand for jury trial on March 1, 1983. The district court granted defendants' motion to strike the demand as untimely on May 18, 1983, and granted defendants' motion for summary judgment on December 1, 1983. This appeal followed.

## II. *This Action Arises Under ERISA*

The Employee Retirement Income Security Act of 1974 (ERISA) is a comprehensive remedial statute designed to protect working men and women and to cure widespread weaknesses in the private pension system. To strengthen the pension system, ERISA established minimum vesting, funding, fiduciary and disclosure requirements which every pension plan must meet. It also delineated a specific uniform standard of conduct for fiduciaries. *See generally* H.R.Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639.

■ ERISA applies to any "employee benefit plan" if it is established or maintained by any employer or employee organization engaged in commerce or in any industry or activity affecting commerce. 29 U.S.C. § 1003(a). An "employee welfare benefit plan" is broadly defined to include:

> [A]ny plan, fund, or program which was ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) ... unemployment, or vacation benefits, ... or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). Section 186(c), cited in subsection (B) above, specifically lists "severance benefits." The effect of citing to section 186(c) is "to include within the definition of 'welfare plan' those plans which provide holiday and severance benefits, and benefits which are similar...." 29 C.F.R. § 2510.3–1(a)(3). *See Donovan v. Dillingham*, 688 F.2d 1367, 1370–73 (11th Cir. 1982) (en banc). Thus, the severance pay plan in this case is an employee welfare benefit plan to which ERISA applies.

■ Neither the vesting and participation requirements nor the funding requirements of ERISA apply to employee welfare benefit plans such as severance plans, 29 U.S.C. §§ 1051(1), 1081(a)(1), but the reporting and disclosure requirements, 29 U.S.C. §§ 1021–1031, and the fiduciary responsibility standards, 29 U.S.C. §§ 1101–

1114, do. Thus, Del Monte's severance pay plan is subject to ERISA's reporting, disclosure, and fiduciary requirements. Once established, ERISA operates to protect an employee's interest in the welfare benefit program regardless of whether the employer complies with the administrative and reporting requirements detailed under ERISA. *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir.1982). *Accord, Dependahl v. Falstaff Brewing Corp.*, 491 F.Supp. 1188, 1195 (E.D.Mo.1980), *aff'd* 653 F.2d 1208 (8th Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981).

## III. *The Decision to Deny Benefits*

### A. *Standard of Review*

■ "Summary judgment is appropriate if, viewing the evidence in the light most favorable to the opposing party, the trial court finds 'that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.' Fed.R.Civ.P. 56(c)." *Lojek v. Thomas*, 716 F.2d 675, 677 (9th Cir.1983). The court of appeals reviews de novo a district court's grant of summary judgment. *Id.*

■ In this case, this court, like the trial court, reviews another decisionmaker: the welfare benefit plan administrator. Del Monte, although it assumed the posture of an administrator in accordance with 29 U.S.C. § 1002(16)(A)(ii), made no attempt to comply with any of the duties that ERISA places upon a benefit plan administrator. To the contrary, the Severance Allowance Policy was actively concealed in violation of ERISA's reporting and disclosure requirements. *See* 29 U.S.C. § 1021(a) (disclosure to all plan participants); 29 U.S.C. § 1021(b) (various reporting requirements). Nor has Del Monte created any of the procedural mechanisms for benefit determinations that ERISA mandates. *E.g.*, 29 U.S.C. § 1133 (requiring compliance with claims procedures under Department of Labor regulations).

Despite its failure to assume any of ERISA's obligations, Del Monte urges upon us the deferential standard of review generally applicable to administrator's decisions under ERISA: "decisions by the trustees of an employee benefit plan will not be

reversed by the courts unless they are arbitrary, capricious, made in bad faith, not supported by substantial evidence, or erroneous on a question of law." *Malhiot v. Southern California Retail Clerks Union*, 735 F.2d 1133, 1135 (9th Cir.1984). We do not decide that this is the only applicable standard of review when ERISA's provisions have been flouted in such a wholesale and flagrant manner. We do, however, decide that the district court erred by holding, as a matter of law, that Del Monte's decision survived even this deferential standard.

B. *The Decision to Deny Severance Benefits to the Employees Could Not be Said as a Matter of Law Not to be Arbitrary and Capricious*

■ The administrator of an employee welfare benefit plan, such as this severance benefit policy, has no discretion to secrete the plan, to flout the reporting, disclosure and fiduciary obligations imposed by ERISA, or to deny benefits in contravention of the plan's plain terms. 29 U.S.C. §§ 1101–1114 (fiduciary responsibilities with respect to plan); 29 U.S.C. §§ 1021–1031 (reporting and disclosure provisions); 29 U.S.C. § 1104(a)(1)(D) (plan must be administered "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]"). It is undisputed that the administration of this plan failed to comply with these reporting, disclosure and fiduciary requirements. Del Monte's decision to deny benefits in this case was made in the course of, and could have been infected by, these ERISA violations. Thus, the defendants' decision could not be said, as a matter of law, not to be arbitrary and capricious, and summary judgment was inappropriately granted to Del Monte at this stage of the proceedings.

The undisputed facts show that defendants failed to comply with virtually every applicable mandate of ERISA. The Separation Allowance Policy was "confidential," i.e., secret, in contravention of ERISA's reporting and disclosure provisions. 29 U.S.C. §§ 1021–1031. The policy was sub-

ject to no claims procedure. ERISA mandates a reasonable claims procedure, 29 U.S.C. § 1133; the Code of Federal Regulations establishes exactly what will be considered reasonable:

(1) A claims procedure will be deemed to be *reasonable only* if it:

(i) Complies with the provisions of ... this section ....

(ii) Is described in the summary plan description ...,

(iii) Does not contain any provision, and is not administered in a way, which unduly inhibits or hampers the initiation and processing of plan claims, and

(iv) Provides for informing participants in writing, in a timely fashion, of the time limits ....

29 C.F.R. § 2560.503–1(b)(1) (emphasis supplied). Here, there was no summary plan description, no claims procedure, and no provision to inform participants in writing of anything. Del Monte's claims procedure fails simply because there was none. *Id.*

■ While it is thus clear that violations of ERISA's procedural requirements—reporting, disclosure and claims procedures—may amount to arbitrary and capricious conduct, the remedy to which this entitles the victimized employees has often been less than satisfactory. Ordinarily, a claimant who suffers because of a fiduciary's failure to comply with ERISA's procedural requirements is entitled to no substantive remedy. *Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 393 (7th Cir.1983). We do not deny the logic of this proposition in the ordinary case. ERISA mandates no minimum substantive content for employee welfare benefit plans, and therefore a court has no authority to draft the substantive content of such plans.

Under ERISA, however, no great wall divides procedural from substantive violations. Although reporting and disclosure requirements are arguably procedural, it is these procedural requirements that alter the very balance of knowledge and rights between covered employees and their employer. The importance of disclosure ap-

plies to welfare benefit plans as well as to pensions:

> Disclosure has been seen as a device to impart to employees sufficient information and data to enable them to know whether the plan was ... being administered as intended. It was expected that the information disclosed would enable employees *to police* their plans.

H.R.Rep. No. 93–533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639, 4649 (emphasis supplied).

■ When procedural violations rise to the level that they have in this case, they alter the substantive relationship between employer and employee that disclosure, reporting and fiduciary duties sought to balance somewhat more equally. The quantity of defendants' procedural violations may then work a substantive harm. Thus, in reviewing an administrator's decision, a court must consider continuing procedural violations in determining whether the decision to deny benefits in a particular case was arbitrary and capricious. We hold that the type of plan administration practiced by Del Monte is highly probative of whether a particular decision to deny benefits was infected by its having been made in conformity with the objectionable scheme. *Cf. Dennard v. Richards Group, Inc.*, 681 F.2d 306, 314 (5th Cir.1982) (listing various other factors that may be taken into consideration in determining whether the decision of a pension plan administrator

met the arbitrary and capricious standard). In this case, of course, this factor weighs heavily against Del Monte.[1]

■ Other factors also weigh against Del Monte's denial of benefits in this case. With employee welfare benefit plans, as with pension plans that are subject to the full panoply of ERISA requirements, imposition of a standard that is not contained in the terms of a plan amounts to an arbitrary and capricious decision. *See Morgan v. Mullins*, 643 F.2d 1320, 1321 (8th Cir.1981) ("Where the Trustees impose a standard not required by the pension plan itself, this court has stated that such action 'would result in an unwarranted and arbitrary construction of the Plan.'") (quoting *Maness v. Williams*, 513 F.2d 1264, 1267 (8th Cir. 1975)).

Del Monte imposed several standards not required by the severance policy. The plan provides for severance pay when jobs are *"eliminated"* and "alternative *employment opportunities are unavailable within the Corporation"*[2] (emphasis supplied). The plan does not condition receipt of severance benefits upon elimination of positions from the face of the earth, but upon job "eliminat[ion]" and unavailability of "appropriate alternative employment opportunities ... within *the Corporation*." (Emphasis supplied). The plan does not condition receipt of benefits upon employees' subsequent unemployment, but upon job

---

1. The court in *Sly v. P.R. Mallory & Co.*, 712 F.2d 1209 (7th Cir.1983), upon which defendants place heavy reliance, had no occasion to determine whether that plan was infected with arbitrary and capricious administration. Although the *Sly* plan, like Del Monte's plan, was kept confidential from the participants, the appellate court accepted the district court's determination that "the employee benefit plan was administered in a rational and reasonable manner, in good faith, within the discretion of the administrators and in accordance with the plain wording of the documents and instruments governing the plan." *Id.* at 1211. Del Monte's administration, in contrast, was characterized by so many ERISA violations that it is impossible to hold, as a matter of law, that the administration was not arbitrary and capricious.

2. In *Sly*, the plan, "read as a whole," conditioned the availability of severance benefits upon the employee's subsequent and continued unemployment. *Sly*, 712 F.2d at 1211. Del

Monte's plan says nothing of unemployment. In fact, the policy in this case exempts only three classes of people, of which plaintiffs comprise no part: employees subject to union-negotiated termination allowance programs; employees who have been discharged for cause; and employees who have refused transfer to suitable positions of approximately equal pay offered to them by "the Corporation." The employer's denial of benefits in *Sly*, which was neither arbitrary nor capricious, thus differs from Del Monte's because the two plans differ.

The plan in this case also differs from the plan in *Pinto v. Zenith Radio Corp.*, 480 F.Supp. 361 (N.D.Ill.1979), where the decision to deny severance pay was not arbitrary and capricious. The *Pinto* plan, like the *Sly* plan, but unlike Del Monte's plan, conditioned receipt of severance benefits upon the former employee's unemployment. *Id.* at 364.

"eliminat[ion]." The plan does not condition receipt of benefits upon failure of a successor corporation to offer employees jobs after their employment with Del Monte ceases, but upon job "eliminat[ion]."

The plan specifies only that the job be "eliminated" and that alternative Corporation jobs be unavailable. No permissible construction of "eliminated" permits us to imply other conditions into the plan, as Del Monte would have us do. Neither the case law nor Del Monte's past practice allows such bootstrapping.

Certainly, under the applicable case law we cannot deny that jobs are eliminated—and then, perhaps, reinstated—when one employer succeeds another. Even under a collective bargaining agreement, where the National Labor Relations Act imposes various duties on a successor employer, "a business entity which replaces another is not obligated to hire all or any of its predecessor's employees." *Bates v. Pacific Maritime Association*, 744 F.2d 705, 708 (9th Cir.1984) (citations omitted) (applying this rule to a successorship issue arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e-17 and 42 U.S.C. § 1981).[3] Lack of obligation to rehire, and the consequence of the prior job's elimination, is no less real where, as here, the employees lack the benefits of a collective bargaining agreement with either the predecessor or successor employer.

Neither does the term "eliminated" necessarily contain any of these conditions inherent in its usage. *See, e.g., Livernois v. Warner-Lambert*, 723 F.2d 1148, 1155 (4th Cir.1983) (ending defendant's "liability for job severance to those continuing as employees [with the successor] ... would clearly constitute ... job termination"); *Sly*, 712 F.2d at 1210 (even though claimants did not receive severance benefits in this case, the court acknowledged that "[a]s a result of the sale [of the business as an ongoing concern], employees of the

[predecessor company] were terminated from their employment"); *Pinto*, 480 F.Supp. at 364 (claimants unentitled to benefits because of overall construction of severance plan, but court acknowledged that sale of business as an ongoing concern resulted in the loss of plaintiff's old job, and his being "immediately hired by defendants' successor company"). *See also Chapin v. Fairchild Camera & Instrument Corp.*, 31 Cal.App.3d 192, 197–98, 107 Cal.Rptr. 111, 115 (1973) ("the sale [of a business as an ongoing concern] involved a permanent release of the Employees").

Nor can we permit resort to Del Monte's secret intentions behind its secret severance pay policy to imply these conditions into the plan. Del Monte claims that the secret purpose behind its secret severance benefit policy was to benefit only those employees who were without a job of any kind after termination. We decline to refer to the secret intent behind a secret plan to determine whether the denial of severance benefits in this case was not arbitrary and capricious. Allowing reference to this factor would only encourage violation of ERISA's reporting and disclosure requirements, in the hope of later being able to interpret the policy through the cost-benefit analysis of hindsight. In *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982), the court stated: "it would be incongruous for persons establishing or maintaining informal or unwritten employee benefit plans, or assuming the responsibility of safeguarding plan assets, to circumvent the Act merely because an administrator or other fiduciary failed to satisfy reporting or fiduciary standards." *Id.* at 1372. Thus, that court decided that a plan did exist within the meaning of ERISA despite its informal and unwritten form. That court decided only that jurisdiction under ERISA therefore existed. We are faced with the next logical question: May the same failure to satisfy reporting or

---

**3.** Del Monte contends that the employees' impressions of their work show only slight differences between their job tasks before and after the sale. While perhaps supported by deposition testimony, this contention is irrelevant. The employees' subjective attitude about job similarity does not bear on whether one job was eliminated and another took its place, because the plan conditions receipt of benefits on job elimination—not job dissimilarity.

fiduciary standards go judicially unnoticed in determining the company's obligations under the written expression of the plan? Like the *Donovan* court, we answer "no."

■ For similar reasons we decline to reward Del Monte's past practice of denying severance benefits to employees in this situation by interpreting the plan with reference to Del Monte's past course of conduct. Imposition of conditions outside the plan amounts to arbitrary and capricious conduct in spite of how often it is practiced. *See Dennard v. Richards Group, Inc.*, 681 F.2d at 318 (" 'if the interpretation is unreasonable from the beginning, such an interpretation may still be arbitrary and capricious' ") (quoting *Morgan v. Mullins*, 643 F.2d at 1324 n. 4).

ERISA seeks "to safeguard the well-being and security of working men and women and to apprise them of their rights and obligations under any employee benefit plan." *Donovan v. Dillingham*, 688 F.2d at 1372. Not coincidentally, the evils against which ERISA was enacted to guard —insecurity, lack of knowledge, and inability to police plan administration—are just the evils that appear in Del Monte's administration of its plan. Del Monte's counsel revealed as much in his treatment of two hypothetical situations that could arise under its plan. First, in Defendant's Reply Memorandum in Support of Motion for Summary Judgment before the district court, Del Monte states: "Even if [a president of a divested subsidiary of Del Monte which had been sold as an ongoing concern] actually received such severance benefits, it is understandable that the president of the company would lose his job when his company was bought as an on-going [sic] concern and that he would receive severance pay." Understandable for a president, but not for a salaried nonunion employee, based on Del Monte's secret distinctions and conditions. Second, at oral argument, Del Monte's counsel was asked, "What if an executive, the president of Del Monte, terminated his employment with Del Monte and the next day got a job working for Pillsbury. Would he be entitled to severance pay?" Counsel responded, "Probably." Thus, benefits would "probably" be available for a president or a vice president, but not for a salaried nonunion employee, based on Del Monte's secret distinctions and conditions. We decline to undermine the purposes of ERISA by considering Del Monte's secret conditions on its secret plan that result in such widely disparate results.

## IV. Preemption

Plaintiffs' complaint contained seven causes of action, one of which was based on a federal theory of liability (ERISA). The remaining causes of action were based on state common law theories of liability (breach of contract implied in fact; promissory estoppel; estoppel by conduct; fraud and deceit; and breach of contract).

Defendants moved for partial summary judgment on plaintiffs' state law claims based on ERISA preemption. The district court granted the motion, and the order dismissing the first, second, third, fourth, fifth, and seventh causes of action was entered May 18, 1983. Plaintiffs argue common law principles are applicable under ERISA as a matter of federal law, and the court may therefore incorporate state common law causes of action into that common law to further ERISA's policies.

■ The district court was correct in finding that ERISA preempted plaintiffs' state common law causes of action. We recognize that "the preemptive effect of ERISA is broad, [but] it is not all-encompassing." *Lane v. Goren*, 743 F.2d 1337, 1339 (9th Cir.1984). ERISA is, however, broad enough to preempt the causes of action upon which plaintiffs sought to rely. *See Lafferty v. Solar Turbines International*, 666 F.2d 408 (9th Cir.1982) (common law breach of contract cause of action preempted by ERISA); *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1215–16

(8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981) (Congress had preempted state common law claims of tortious interference with employee benefit plans).

### V. *Demand for Jury Trial*

 The trial judge's decision to strike plaintiffs' demand for jury trial will be reversed upon a showing of abuse of discretion. *Las Vegas Sun, Inc. v. Summa Corp.,* 610 F.2d 614, 621 (9th Cir.1979), *cert. denied,* 447 U.S. 906, 100 S.Ct. 2988, 64 L.Ed.2d 855 (1980). Since plaintiffs did not request a jury trial before this case was removed from state court, Fed.R.Civ.P. 38(b), made applicable by Rule 81(c), required plaintiffs to demand a jury trial within ten days from the filing of the last pleading concerned with the issues for which trial by jury is sought. The last pleading was Del Monte's answer, filed December 23, 1982. Plaintiffs filed a demand for a jury trial on March 1, 1983, almost two months late. Failure to file within the time provided constitutes a waiver of the right to trial by jury. Fed.R.Civ.P. 38(d).

 Plaintiffs argue the district court abused its discretion in failing to grant relief from their unintentional waiver. The district court in its discretion may order a jury trial on a motion by a party who has not filed a timely demand for one. Fed.R.Civ.P. 39(b). That discretion is narrow, however, and does not permit a court to grant relief when the failure to make a timely demand results from an oversight or inadvertence. *Lewis v. Time, Inc.,* 710 F.2d 549, 556–57 (9th Cir.1983). *See Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668, 675 (9th Cir.1975) (the district court's discretion "should rarely be exercised to grant a trial by jury in default of a proper request for it"). Plaintiffs allege no reason for their failure to file a timely demand for jury trial. Nor is there an independent constitutional or statutory right to jury trial in ERISA actions. *In re Vorpahl,* 695 F.2d 318 (8th Cir.1982); *Calamia v. Spivey,* 632 F.2d 1235 (5th Cir. 1980); *Wardle v. Central States,* 627 F.2d 820, 828–30 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). Thus, the district court did not abuse its discretion in striking plaintiffs' untimely demand for jury trial.

### CONCLUSION

In light of the evidence of serious violations of ERISA by Del Monte, we find that Del Monte's decisions could not be said as a matter of law not to be arbitrary and capricious; because plaintiffs did not move for summary judgment, we need not decide whether plan administration so riddled with illegality makes the denial of benefits arbitrary and capricious as a matter of law. Hence, summary judgment was inappropriately granted at this stage of the proceedings. The grant of summary judgment is REVERSED and this cause is REMANDED to the district court for further proceedings upon plaintiffs' complaint.