Lawrence J. CARICH, Plaintiff–
Appellant,

v.

JAMES RIVER CORPORATION, A Virginia Corporation Administrator of the Crown Zellerbach Salaried Employees Retirement Savings Plan, Defendant–Appellee.

No. 90–35567.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 9, 1991.

Decided Feb. 3, 1992.

As Amended on Grant of Rehearing
April 13, 1992.

Henry Kantor, Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, Or., for plaintiff-appellant.

Steven J. Nemirow, Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, Or., for defendant-appellee.

Before GOODWIN, SCHROEDER and NOONAN, Circuit Judges.

SCHROEDER, Circuit Judge:

Lawrence J. Carich appeals the district court's summary judgment dismissal of his claim for benefits under ERISA, 29 U.S.C. § 1132(a). Defendant-appellee James River Corporation (James River), is the administrator and fiduciary of the James River II, Inc. Salaried Employees Retirement

Savings Plan (Plan). The Plan is made up of a number of funds. Carich, a participant in the Plan, in January of 1987, asked the Plan to transfer the value of his ownership of stock in the Common Stock Fund to the Fixed Income Investment Fund. Using a form supplied by the Plan, he directed that the transfer become effective March 31, 1987. Such a transfer, however, required the Plan Administrator to sell stock, and the sale was not in fact accomplished until June 3, 1987. Unfortunately, during the month of May the stock declined in value. Carich filed this suit to recover approximately $24,000, representing the difference between the value of stock when it was sold in June and its value at the time he reasonably expected the transfer to take place.

The district court viewed the issue to be whether the Plan Administrator acted arbitrarily or capriciously in valuing the stock as of the date of sale rather than as of March 31, 1987. It held that the valuation was not arbitrary or capricious because the Plan Document provided that James River could elect to value shares as of the date of sale, and because the Administrator notified participants that the Plan was changing its method of valuation.

In his appeal Carich argues that he reasonably expected transferred funds to be valued as of approximately March 31 in accordance with his direction, and, further, that he could not have anticipated that the transfer would be valued as of a date more than four months after he had submitted the transfer request. Evidence in the record suggests that the length of time that elapsed before the sale was consummated was excessive.

■■■ The district court, however, agreed with the position espoused by James River that according to the Plan documents, the Plan was entitled to value the stock as of the date of sale, regardless of the delay resulting from any improper handling of the participant's request. We conclude that such a result would give the Plan and its Administrator unlimited discre-

tion in the handling of Fund transfers and is contrary to the principles underlying ERISA. *See* 29 U.S.C. § 1104(a)(1). *See also Local Union 598 etc. v. J.A. Jones Construction Co.*, 846 F.2d 1213, 1217 (9th Cir.1988) (ERISA designed to protect employee interest in pension and welfare plans through uniform reporting, disclosure and fiduciary responsibility standards); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir.1984) (plan administrator has no discretion to flout fiduciary obligations imposed by ERISA). We therefore reverse and remand to the district court for further proceedings to determine the merits of the plaintiff's claim that the defendant delayed excessively in processing the fund transfer request.

The events leading up to this controversy occurred in 1986, when the defendant James River Corporation acquired Crown Zellerbach, the company which had employed Carich for many years. As a result of this acquisition, the Crown Zellerbach Salaried Employees Retirement Plan became a part of the James River II, Inc. Salaried Employees Benefit Plan. James River, as Administrator of the Plan, instituted certain changes that affected transfers of interest between funds. Up until July 1, 1986, a request from a participant like Mr. Carich, for the transfer of interest from the Stock Fund to the Income Fund, was accomplished by the Plan Administrator without any actual sale of stock on the open market. Effective July 1, 1986, however, James River suspended employee and employer contributions to the Crown Zellerbach Plan. After that time, transfers from a participant's Stock Fund required the actual sale of stock. Prior to that date, stock transfers were effective as of the last day of the calendar quarter. After July 1, 1986, transfers were to be effective as of the date of the sale of the stock and the interest transferred was valued accordingly.

The James River Plan Document itself authorized this change in the method of valuation, since it provided that when a transfer of account balances involved the sale of stock, James River had the discre-

tion to value the shares at the actual amount realized from the sale. Section 8(d)(ii) of the Plan Document provided:

* * * (ii) if shares of Stock are sold to provide cash needed for transfer, James River, in its discretion, may instruct the Trustee to value such shares at the amount realized therefore * * *.

In a letter dated May 23, 1986, the so-called "Sperling letter," the Vice President of James River wrote to all "Crown Zellerbach/James River Employees participating in the Crown Zellerbach Retirement Savings Plan," explaining that effective July 1, 1986, contributions to that plan would be suspended and valuation procedures changed. The notification letter said in pertinent part:

The "Valuation Date" for any transaction involving shares of stock will be the actual date of sale or purchase of shares, rather than the last day of the month.

Neither the Sperling letter nor the Plan Document stated how much time it would take to process requests for transfers in the event stock needed to be sold, nor did either the Sperling letter or the Plan Document notify participants that more time would be required if the sale of stock were involved. The Sperling letter did not explain which transactions would involve shares of stock and hence trigger valuation as of the actual date of sale or purchase of shares. The letter did state that "transfers between your James River Stock Account and the Income Fund are permitted on a quarterly basis." There was, in short, no way for Mr. Carich to know, when he submitted his "Inter–Fund Transfer of Balances Form" on January 23, 1987, that he was in fact requesting a sale of stock that would not take place until June.

Carich contends that he submitted his request on January 23, 1987, on a form provided by the defendant. The form itself had a blank where the "effective date of transfer" was to be shown. Carich alleges he spoke to employees of the defendant and was told that the effective date would be March 31 and that, according to his direction, the form was typed to reflect that date. Above the signature line was a form statement advising both Carich and James River as follows: "I understand that the amounts of the transfers are based on the market value of my employee account(s) as of the effective date of transfer." Thus, although Carich could not have anticipated a June sale, the defendant James River, for its part, should have known that Carich was asking for the transfer to be effective March 31, 1987.

■ James River explains its delay in effecting the sale of stock, and hence the account transfer, by pointing out that it had hired a new recordkeeper to administer the accounts, that this was a transition period in that administration, and that the Plan Administrator needed time to accumulate transfer requests in order to save brokerage fees on stock sales. Those facts are not disputed. This problem may well have arisen because new administrators took longer than they should have to turn around initial requests for stock transfers. That is a risk, however, to be borne by the party responsible for choosing the administrators, not a risk to be borne by a plan participant. *Batchelor v. Oak Hill Medical Group*, 870 F.2d 1446, 1449 (9th Cir. 1989) (third party responsible for establishing pension had duty regarding selection and retention of fund administrator); *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1325 (9th Cir.1985) (Corporation had fiduciary duty, and could be liable with respect to selection of Plan Administrator). In the absence of notice as to the likelihood of delay, Carich would appear on this record to have been entitled to have the transfer made as of March 31, or at least within a reasonable period after his request. James River, however, disputes Carich's version of what occurred on Jan. 23, 1987, and suggests that Carich may not have reasonably expected the transfer to occur as of March 31 or shortly thereafter. Carich has not moved for summary judgment because issues of fact remain to be determined.

The JUDGMENT of the district court is REVERSED AND THE MATTER IS REMANDED FOR FURTHER PROCEED-

INGS ON THE MERITS OF PLAINTIFF'S CLAIM.