David A. POTTER, Plaintiff,

v.

SHONEY'S, INC. and Richard Stone, Defendants.

No. 1:98CV00229.

United States District Court,
M.D. North Carolina.

July 16, 1999.

James A. Dickens, Greensboro, NC, for David A. Potter, plaintiff.

Maranda J. Freeman, Dan M. Hartzog, Cranfill, Sumner & Hartzog, Raleigh, NC, Raymond M. Davis, Cranfill, Sumner & Hartzog, L.L.P., Raleigh, NC, for Shoney's Inc., Richard Stone, defendants.

## MEMORANDUM OPINION

OSTEEN, District Judge.

This matter comes before the court on Defendants' motion for summary judgment on all Plaintiff's claims pursuant to Fed. R.Civ.P. 56(c). For the reasons discussed herein, the court will grant Defendants' motion for summary judgment on Plaintiff's ERISA claim. Having disposed of the sole federal claim, the court in its discretion declines to exercise supplemental jurisdiction over the remaining state law claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The events underlying the present lawsuit arise from Plaintiff David A. Potter's (Potter) employment and termination with Defendant Shoney's, Inc. Specifically, Potter alleges that in 1986 he began his employment with Shoney's South, a predecessor in interest of Shoney's. (Notice, Ex. A—Am.Compl.¶ 4.) Throughout his employment, Plaintiff received various promotions, and in 1997, assumed the position of regional owner operator. *Id.* ¶ 5.[1] Defendant Richard Stone (Stone) was also an employee of Shoney's and held the position of director of operations of the region which included the seven restaurants supervised by Potter. *Id.* ¶ 7. As director of operations, Defendant Stone supervised 12 regional owner operators and 92 Shoney's restaurants. Defendant Stone was Potter's immediate supervisor. *Id.* ¶ 8.

Plaintiff's seven causes of action arise out of a conference call that Potter participated in. On February 21, 1997, Stone scheduled a conference call with all 12 regional owner operators under his direction. *Id.* ¶ 10. While the regional owner operators were waiting to be connected, someone allegedly made racist remarks, which included the use of the word "nigger." (Mem.Law Supp. Defs.' Mot. Summ.J. at 3.) Sheila Wilde and Herman Lee, two Shoney's employees and participants in the conference call, overheard the remarks. *Id.* Both Wilde and Herman independently reported the conversation. *Id.* at 4. An investigation by Stone followed. *Id.* at 5. On February 25, 1997, Potter was summoned to a meeting with Stone in which Potter was asked if he made racist remarks to another Shoney's employee while he was awaiting the conference call. (Notice, Ex. A—Am. Compl.¶ 19.) Stone informed Potter that he was under investigation for allegedly making the racist remarks and Potter was suspended from his job for two days. *Id.* On February 27, 1997, having concluded the investigation, Stone terminated Potter's employment on the grounds that he made racist remarks on February 21, 1997. *Id.* ¶ 20.

Although Shoney's maintained a Severance Plan Benefits Policy, in which terminated employees meeting specific eligibility requirements outlined in the policy could claim severance benefits, Potter did not receive severance pay. *Id.* ¶¶ 49–50. Plaintiff further alleges that he was never expressly notified that Shoney's had determined that he was not entitled to receive severance benefits. *Id.* ¶ 50.

Plaintiff filed an action in state court alleging causes of action for slander, tortious interference with contract against Defendant Stone, violations of ERISA, intentional infliction of emotional distress, breach of contract against Defendant Sho-

---

1. As regional owner operator, Plaintiff was responsible for supervising seven Shoney's restaurants located in North Carolina. (Notice, Ex. A—Am.Compl.¶ 5.)

ney's, and punitive damages arising out of his termination. (Notice, Ex. A—Am. Compl.)

Defendants removed the action from the Superior Court of Guilford County, North Carolina, to this federal court alleging federal question jurisdiction on the grounds that "[P]laintiff's Fifth Cause of Action for (breach of contract) is pre-empted by, and within the civil enforcement provisions of, the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.*" (Notice of Removal ¶ 2.)[2] Defendants contend that since the benefit plan allegedly breached constituted an ERISA plan it was subject to federal jurisdiction. Defendants further contend that removal was proper since the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship. *Id.* ¶ 5. Defendants subsequently filed a motion for summary judgment on all claims which is now pending before the court.

## II. DISCUSSION

### A. Standard for Summary Judgment

An issue may be decided on motion for summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether or not to grant summary judgment, the evidence is to be viewed in the light most favorable to the nonmoving party. *See Motor Club of Am. Ins. Co. v. Hanifi*, 145 F.3d 170, 174 (4th Cir.1998).

### 1. Defendants are Entitled to Summary Judgment on Plaintiff's ERISA Violation Claim

Plaintiff alleges that Shoney's violated the ERISA statute by failing to provide Plaintiff with severance pay. *See* Notice; Ex. A—Am.Compl. ¶¶ 55–58. The parties do not dispute the fact that Shoney's Severance Benefits Plan constituted an employee welfare benefit plan within the meaning of ERISA. *See id.* and Notice of Removal ¶ 2; *see also Delaye v. Agripac, Inc.*, 39 F.3d 235, 237 (9th Cir.1994); *Aliff v. BP Am., Inc.*, 26 F.3d 486, 488–89 (4th Cir.1994). An action for benefits under an employee welfare plan governed by ERISA may only be maintained by a "participant" or "beneficiary" of an ERISA plan. 29 U.S.C. § 1132(a)(1); *Clark v. E.I. Dupont de Nemours & Co.*, 105 F.3d 646, No. 95–2845, 1997 WL 6598 (4th Cir. Jan. 9, 1997). The Fourth Circuit has held that a former employee qualifies as a participant of a plan where "the claimant has ... 'a colorable claim that ... he ... will prevail in a suit for benefits....'" *See Sedlack v. Braswell Serv. Group, Inc.*, 134 F.3d 219, 226 (4th Cir.1998). The Fourth Circuit has found "[t]he requirement that a claim be colorable 'is not a stringent one' and is satisfied if the claim 'is arguable and nonfrivolous, whether or not it would succeed on the merits.'" *Id.*

The parties dispute whether Plaintiff qualifies as a participant such that he has standing to bring the present action. Because the court finds that Plaintiff's ERISA cause of action fails on other grounds, the court need not decide whether Plaintiff is a participant under the plan. Assuming without deciding that Plaintiff is a participant, the denial of severance benefits did not violate ERISA.

The Supreme Court has delineated the framework for judicial review of determinations by ERISA plan administrators that a plaintiff was not entitled to benefits. *See Firestone Tire & Rubber Co. v. Bruch,*

---

**2.** Generally, under the well-pleaded complaint rule, a federal question must appear on the face of the complaint and a defense which raises a federal question will not establish jurisdiction. The Supreme Court has recognized a narrow exception to the well-pleaded complaint rule. A federal defense of preemption that arises under 29 U.S.C. § 1144(a) of ERISA will establish federal question jurisdiction. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62–63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987).

489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). In *Firestone*, the Court held that "a denial of benefits challenged under a § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* In the wake of the Supreme Court's ruling, it is well settled that "[i]f discretion does exist, review should be deferential, and a plan administrator's determination to deny benefits may be overturned only for an abuse of that discretion." *See Fagan v. National Stabilization Agreement of Sheet Metal Indus. Trust Fund,* 60 F.3d 175, 179 (4th Cir.1995).

In the present action, the plain language of the plan indicates the plan administrator was afforded discretion. The plan expressly states that "[t]he Plan Administrator has the discretionary authority to interpret the terms of this policy and to determine all relevant policy issues or controversies." *See* Notice, Ex. A—Shoney's Severance Benefits Policy at 2. Pursuant to *Firestone,* the appropriate standard of review of the decision to deny benefits to Plaintiff shall be under the more deferential abuse of discretion standard. *See Burdette v. Mees,* 933 F.2d 1001, Nos. 90–3108, 90–3118, 1991 WL 84160, *2 (4th Cir. May 23, 1991) (unpublished disposition):

(We must determine whether the Trustees abused their discretion or acted arbitrarily and capriciously in denying … benefits. We emphasize that the scope of this review is narrow; this court is not empowered to 'substitute its own judgment for that of the agency' when the plan fiduciaries have offered a reasonable interpretation of a plan's provisions.) (citation omitted).[3]

In determining whether the plan administrator acted arbitrarily and capriciously in denying benefits, the Fourth Circuit has held that a court may, among other things, look to see whether the decision was based upon substantial evidence. *Id.* at *3. Pursuant to the express terms of the plan, employees are not eligible to receive severance pay if they "are involuntarily terminated for 'misconduct' or 'cause' for reasons including but not limited to: violation of law or Company policy; mistreatment of Company Employees." The parties do not dispute that Plaintiff was terminated after Defendants received two unsolicited complaints independently alleging that a Shoney's employee, later identified as Plaintiff, made racially inappropriate remarks. (Mem.Law Opp'n Defs.' Mot.Summ.J. at 3.)

While Plaintiff denies making any racially insensitive comments during the conference call, he nevertheless concedes that such acts constitute misconduct and would

---

**3.** In the present action, the Severance Benefits Policy expressly states that the vice president of compensation and benefits for Shoney's, Inc. is the named plan administrator. *See* Notice, Ex. A—Severance Benefits Plan at 2. It is arguable that since the plan administrator is also an employee of Defendant, there may be a potential conflict of interest. Recognizing the possibility that a conflict of interest may arise, the Supreme Court has applied a modified arbitrary and capricious standard. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). Rather than deviate completely from the well established arbitrary and capricious standard, the Supreme Court has instead held that "where a plan administrator … is vested with discretionary authority and is 'operating under a conflict of

interest, that conflict must be weighed as a "factor in determining whether there is an abuse of discretion." ' " *See Ellis v. Metropolitan Life Ins. Co.,* 126 F.3d 228, 233 (4th Cir.1997) (citation omitted).

Assuming without deciding that Defendant Shoney's plan administrator may be operating under a conflict of interest such that the more appropriate standard of review is a modified arbitrary and capricious standard, the court still finds that Defendant Shoney's denial of benefits was not arbitrary and capricious. Plaintiff does not contend that the plan administrator suffered from any conflict of interest. *See* Mem.Law Opp'n Defs.' Mot. Summ.J. at 19. Even under a modified arbitrary and capricious standard, the court affirms Defendant Shoney's denial of severance benefits.

be grounds for terminating an employee for cause. *Id.* at *1. There is substantial evidence in the record that Plaintiff was terminated because it was determined that he was the individual who made the racially insensitive comments. It is undisputed that Plaintiff, as one of the 12 regional owner operators, participated in the conference call. *Id.* at *4. Plaintiff recalls that he made comments about a dirty telephone in a store in Winston–Salem. Specifically, Plaintiff admits saying "the phone was so dirty. It was filthy black.... I wouldn't even use the thing until somebody cleaned it.... It actually stunk." *Id.;* App.Supp.Mem.Law Opp. Defs.' Mot.Summ.J., Vol. I, Tab A—Potter Dep. at 100–01. The Shoney's employees, Wilde and Lee, independently stated in their depositions they heard a man say that a store in Winston–Salem had a telephone "that was so damn dirty," he refused to use it until someone cleaned it up. (Mem.Law Supp. Defs.' Mot.Summ.J. at 3; *see also* App.Supp.Mem.Law Opp. Defs.' Mot.Summ.J., Vol. I, Tab E—Lee Dep. at 46–47 and Tab F—Wilde Dep. at 74–83; Vol. II, Tab P—Wilde Statement and Tab 0—Lee Statement.) Wilde also stated that she heard a voice on the phone say (1) "the kitchen at that store 'looked like shit,'" (2) "you know how those niggers are when you group them together," and (3) comment about the body odor of the referenced employees. (Mem.Law Supp. Defs.' Mot.Summ.J. at 3–4, referring to Wilde Statement.) Lee recalled hearing a male voice make reference to a Winston–Salem store by stating "that it is just like a store with a bunch of niggers working in it. I can tell you don't have a bunch of niggers working here because you do not have that smell in your store." *See* Mem.Law Supp. Defs.' Mot.Summ.J. at 4; Lee Dep. at 47 and Lee Statement. It is further undisputed that Plaintiff supervised the restaurant in Winston–Salem referenced in the conversation. *See* Notice, Ex. A—Am. Compl. ¶ 5. The court also gives due regard to the fact that Plaintiff can offer no evidence that Mr. Stone or any other Shoney's employee, including Wilde and Lee, held any personal animus toward Plaintiff. (Potter Dep. at 28–42.) During Defendant Stone's interview with Plaintiff, although he denied making any racial slurs, Potter did admit using the terms "dirty," "filthy black phone" concerning a telephone located in the Winston–Salem store, and "stunk" in the conversation. (Mem.Law Supp. Defs.' Mot.Summ.J. at 6; Potter Dep. at 100–02.) Plaintiff's admissions mirror the testimony given by Wilde and Lee.

■ In addition, although Plaintiff contends that the Defendants' investigation of the conversation was inadequate,[4] neither party disputes the fact that Defendants conducted an investigation to determine first whether such comments were made, and if so, who made them. Neither party disputes the fact that Defendants determined that Plaintiff engaged in the misconduct and terminated him on those grounds. The court agrees with Defendants that "[u]ndisputed evidence shows that Shoney's acted in good faith in responding to the complaints." (Reply Br. Supp. Defs.' Mot.Summ.J. at 5.)[5] The court finds that Shoney's determination, after investigation, that Plaintiff was the individual who engaged in the racially inappropriate conversation was reasonable and was not arbitrary and capricious as a matter of law. There is substantial evidence for Defendants Stone and Shoney's, and the named plan administrator to conclude that Plaintiff engaged in the misconduct. It is well established that "the administrator['s] ... decision will not be

---

4. *See* Mem.Law Opp. Defs' Mot.Summ.J. at 5.

5. It is not disputed that Defendants requested Wilde and Lee to file written complaints; Defendants interviewed potential witnesses; Defendants interviewed Plaintiff and permitted him to review the written complaints and respond; and the investigators reported their findings to Human Resources "for an independent assessment of the evidence." (Reply Br.Supp. Defs.' Mot.Summ.J. at 5.)

disturbed if it is reasonable, even if this court would have come to a different conclusion independently." *See Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir.1997).

The court also finds it noteworthy that despite Plaintiff's contention that he did not engage in wrongful misconduct, Plaintiff has not filed an action against Defendants for wrongful discharge.[6] *See* Notice, Ex. A—Am.Compl. Absent a claim for wrongful discharge and in light of the substantial evidence implicating Plaintiff in the conference call and as an active participant in the alleged racially inappropriate and highly offensive conversation, the court finds 1) it was reasonable to conclude that Plaintiff committed the misconduct; 2) it was reasonable to terminate Plaintiff; and 3) it was reasonable to deny Plaintiff severance pay.

Furthermore, having found substantial evidence that Plaintiff was terminated for engaging in wrongful misconduct, it is clear that Plaintiff was not covered by the express language of the benefits plan and was not eligible to receive severance pay. Therefore, the administrator clearly did not abuse his discretion in denying benefits. The court finds that the plan administrator would have abused his discretion in awarding Plaintiff benefits in contravention of the plan's plain and explicit language.

■ Plaintiff further asserts that Shoney's failed to notify Plaintiff of denial of severance pay, in direct conflict with the ERISA mandates. *See* Notice, Ex. A—Am.Compl. ¶¶ 50–51 and Mem.Law Opp'n Defs.' Mot.Summ.J. at 19. The record is devoid of any evidence that Shoney's complied with ERISA's procedural requirements for notifying a participant of denial of benefits. *See* 29 U.S.C. § 1133 (1988).[7] Nor does Shoney's contend that it complied with the statutory notice requirements. The court does not find that the procedural violations establish that Shoney's acted arbitrarily and capriciously in denying Plaintiff benefits. *See Sedlack v. Braswell Serv. Group, Inc.*, 134 F.3d 219,

---

6. The court notes that Plaintiff has now moved to amend his complaint to add an additional claim for wrongful discharge in violation of ERISA, 29 U.S.C. § 1140, after a trial date has been set, dispositive motions have been briefed and filed, and a settlement conference has been held by the court. *See* Mot. Leave File Pl.'s Second Am.Compl., July 1, 1999.

Pursuant to Fed.R.Civ.P. 15(a), the court in its discretion may grant or deny a motion to amend. Cognizant of the fact that a motion to amend should be liberally granted when justice so requires, it would nevertheless be inappropriate and prejudicial to the parties to grant the motion at this late stage of the litigation. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir.1986) (Holding that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the moving party, or the amendment would be futile."); *Elf Atochem, N.A. v. United States*, 161 F.R.D. 300, 301 (E.D.Pa.1995) (Noting that "if the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial.").

Despite Plaintiff's argument to the contrary, the court does not find that Defendants were on notice of this claim from the beginning of the litigation and "were aware of Plaintiff's intent." *See* Mot. Leave File Pl.'s Second Am.Compl. ¶¶ 5–6. Defendants have relied on the fact that Plaintiff had not filed a claim for wrongful discharge. *See* Mem.Law Supp. Defs.' Mot.Summ.J. at 20 (Noting that "Plaintiff has not alleged wrongful termination or discrimination."). Permitting Plaintiff at this late stage to amend the complaint would clearly prejudice Defendant and the motion to amend will be denied.

7. Pursuant to 29 U.S.C. § 1133:

[E]very employee benefit plan shall—
(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

225 (4th Cir.1998) ("Finding that failure to comply with ERISA's procedural requirements does not entitle a claimant to a substantive remedy.") (citation omitted).

The court is persuaded by the case of *Crocker v. Southern Bell Tel.*, 887 F.2d 1078, No. 88–3088, 1989 WL 117941 (4th Cir. Sept.11, 1989) (unpublished disposition), and adopts its rationale. In *Crocker*, the defendant failed to give the plaintiff written notice of the specific reasons for the denial of benefits and to provide him with an opportunity for an internal review, as required by ERISA. *Id.* at *6. The court nevertheless held:

> Evidence of procedural malfeasance in the general administration of a plan, however—or for that matter even in the handling of an individual claim—does not necessarily justify a conclusion that a particular benefits denial was so unreasonable on the merits as to constitute an abuse of discretion. As a general rule, procedural violations of ERISA itself or the terms of an individual plan do not entitle an aggrieved employee to a substantive remedy.

*Id.* The court further warned that "before a court disturbs a challenged benefits determination on the ground that it constituted an abuse of discretion, something more than run-of-the mill or even flagrant mismanagement standing alone must appear." *Id.* at *7. In the present action, the court finds that despite the technical deficiencies, the record is replete with evidence establishing that the plan administrator, in his discretion, could have denied Plaintiff's claim.

Perhaps most persuasive is the fact that the record contains no evidence that Plaintiff has been prejudiced by these procedural violations and Plaintiff does not allege prejudice or harm as a result of the procedural deficiencies. Absent an allegation or evidence that Plaintiff has been harmed, the court does not find that these technical violations rise to the level of being arbitrary and capricious as a matter of law and do not constitute an abuse of discretion. *See Sejman v. Warner–Lambert Co.*, 889 F.2d 1346, 1350 (4th Cir.1989); *see also Garavuso v. Shoe Corps. of Am. Indus., Inc.*, 709 F.Supp. 1423, 1430 (S.D.Ohio 1989).

Recognizing that some courts have held that under certain circumstances procedural violations will amount to an abuse of discretion, the court finds those cases to be factually inapposite to the case at hand and not controlling. *See Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir.1984).[8]

The court is also cognizant that some courts have found that where an administrator has failed to comply with notice requirements, the appropriate remedy is to remand the matter to the plan administrator for review. *See Jader v. Principal Mut. Life Ins. Co.*, 723 F.Supp. 1338, 1341 (D.Minn.1989). In the present action, the court finds that remand would be a "useless formality" as there is already substantial evidence that plaintiff was terminated for cause. *See Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 238 (4th Cir.1997) (Holding that "it would be pointless . . . to . . . remand this matter to [the plan fiduciary] with instructions . . . that it . . . provide [plaintiff] with the specific reasons for its continued denial, since those reasons are now apparent to all.").

Furthermore, Plaintiff concedes that the reason his benefits were denied was because he was terminated for cause. *See* Mem.Law Opp. Defs.' Mot.Summ.J. at 19.

---

**8.** In *Blau*, in addition to other procedural violations, the employer actively concealed the severance policy secret and failed to create a claims procedure by which employees could seek severance benefits. *Id.* at 1352. Based upon this conduct, the court held that the defendant had flouted ERISA's procedural provisions "in such a wholesale and flagrant manner" as to "alter the substantive relationship between employer and employee" which worked a substantive harm. *Id.* at 1353–54. This court, however, notes that the *Blau* decision has been greatly criticized and at most, creates a very narrow exception to the general rule that a Plaintiff has no substantive remedy for procedural violations.

Plaintiff does not allege that the decision to deny benefits based on such grounds is arbitrary and capricious. Plaintiff merely contends that he should not have been terminated because he did not commit the wrongful acts. *Id.* The court finds, however, that the record is replete with evidence indicating that Defendants' determination that Plaintiff committed the acts was reasonable and its decision to terminate Plaintiff on such grounds was also reasonable. The court further finds that the plan administrator would have been well within his discretion to rely on the employer's stated grounds for terminating Plaintiff because Defendants' investigation revealed no evidence that any Shoney's employee held any personal animosity toward Plaintiff. Therefore, Plaintiff's argument that procedural violations rendered the denial of benefits arbitrary and capricious is not persuasive and will be denied.

2. Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims

Having dismissed Plaintiff's sole federal claim, the court in its discretion declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims for slander, breach of contract,[9] intentional infliction of emotional of distress, tortious interference with contract, and punitive damages. *See* 28 U.S.C. § 1367(c)(3).

Although Defendants' notice of removal alleges that jurisdiction exists under federal question and diversity of citizenship grounds,[10] the court finds that removal was proper solely on the ground that Plaintiff's ERISA claim raised a federal question. Despite Defendants' allegations to the contrary, the court finds that Defendants have not met their burden of proving that diversity of citizenship exists to sustain a finding that the court has remov-

al jurisdiction on diversity grounds pursuant to 28 U.S.C. § 1441. *See* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure,* § 3739, at 574 (1985 and Supp.1995); *see also Thompson v. Gillen,* 491 F.Supp. 24, 27 n. 4 (E.D.Va.1980). Absent a finding that diversity jurisdiction exists, the court can only entertain Plaintiff's state law claims under supplemental jurisdiction, as there are no independent bases for maintaining jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(a).

■ While removal jurisdiction is a well recognized ground for federal jurisdiction, removal of cases from state to federal court is an infringement on state sovereignty. It is for this reason that removal statutes are strictly construed, with any doubt in favor of remand. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941). The propriety of removal is even more closely guarded and scrutinized when the basis for removal rests on diversity of citizenship grounds. *See Thompson,* 491 F.Supp. at 26 (Holding that one of "reason[s] for strict construction of removal statutes is that the exercise of removal jurisdiction—particularly when based on diversity—is in derogation of State sovereignty.").

It is well settled that "[a] case is removable on diversity grounds if diversity of citizenship can be ascertained from the face of plaintiff's complaint ... *or* this fact is disclosed in other pleadings, motions or papers 'from which it may ... be ascertained that the case is one which is or has become removable.' " *See* Judge William W. Schwarzer, et al., *Federal Civil Procedure before Trial,* Chap. 2D at 19 (1994); *Miller v. Grgurich,* 763 F.2d 372, 373 (9th Cir.1985) ("The diversity upon which removal is predicated ... should generally

---

9. While the court declines to abjudicate Plaintiff's breach of contract claim, the court notes Defendants would be entitled to summary judgment on this issue, as the breach of contract claim is pre-empted by ERISA. *See Aliff*

*v. BP Am., Inc.,* 26 F.3d 486, 488–89 (4th Cir.1994); *Lafferty v. Solar Turbines Int'l,* 666 F.2d 408 (9th Cir.1982).

10. *See* Notice of Removal ¶¶ 2–6.

be determined from the face of the complaint.").

In the instant case, diversity of citizenship cannot be ascertained from the face of Plaintiff's complaint. In fact, the complaint pleads facts which indicate the absence of diversity. Plaintiff alleges that both he and Defendant Stone are citizens of North Carolina. *See* Notice, Ex. A—Am.Compl. ¶¶ 1 & 3. The complaint clearly alleges facts contrary to the removal notice.[11] The fact that Defendants' notice of removal alleges that the parties are diverse and the amount of controversy is satisfied is not alone sufficient to establish diversity jurisdiction, especially since the burden is on Defendants, the party seeking to preserve removal, to prove the existence of jurisdictional facts.

While the court recognizes that Plaintiff has not challenged the removal petition nor made a motion for remand, Plaintiff's failure to do so does not confer removal jurisdiction upon the court. Regardless of whether the parties were diverse, which the complaint clearly suggests otherwise, a motion to remand would have been a useless formality since neither party disputes the existence of federal question jurisdiction based on Plaintiff's federal ERISA claim. The record also suggests that both parties have to this point relied on federal question jurisdiction as the basis for conferring subject matter jurisdiction on this court.

Other courts have held that a plaintiff's failure to challenge the removal petition does not confer removal jurisdiction. *See Franzel v. Kerr Mfg. Co.*, 959 F.2d 628, 630 (6th Cir.1992) ("[U]nchallenged facts alleged in a removal petition do not rise to [the level of an admission of jurisdiction], because, unlike an original complaint, a removal petition does not require responsive pleading. Failure to contest facts al-

leged in such a petition cannot be considered an admission."). Courts have found that where a substantial question regarding diversity appears on the face of the pleadings, Plaintiff's failure to challenge the removal petition or make a motion to remand does not constitute an admission of diversity jurisdiction. *See Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir.1988), *op. amended*, 856 F.2d 111 (9th Cir.1988) (Suggesting that where the complaint does not allege facts showing lack of diversity, such that no substantial question of diversity of citizenship exists on the face of the complaint at the time of removal, and plaintiff does not contest the removal petition nor move for remand, the federal court may accept the removal notice as true and a plaintiff's failure to challenge the factual allegations in the removal notice is treated as an admission of those facts.).

The complaint unequivocally raises a substantial question concerning Defendant Stone's citizenship for purposes of establishing diversity jurisdiction. Giving due regard to the delicate balance between state and federal power, and the admonition that removal statutes are to be strictly construed, the court finds that Defendants have not carried their burden of proving the existence of complete diversity among the parties. *See* Fed.R.Civ.P. 12(h)(3); *Thompson*, 491 F.Supp. at 26 ("Although no motion for remand has been filed by plaintiff, courts of limited jurisdiction, such as this Court, have the duty, sua sponte, to determine in each case their jurisdiction to proceed.").

Having now disposed of the sole federal claim and finding that jurisdiction under diversity grounds has not been established, the court finds that there is no independent basis for exercising jurisdiction over the remaining state law claims. There-

---

11. Recognizing that the majority of courts look to the whole record brought forward on removal, and not just the complaint, to determine if removal jurisdiction exists, "[e]ven under this approach ... the burden of estab- lishing removal jurisdiction rests upon the party seeking to invoke it." *See Thompson v. Gillen*, 491 F.Supp. 24, 27, n. 4 (E.D.Va. 1980). In the present case, Defendants have not met their burden.

fore, the court could only entertain these state law claims under supplemental jurisdiction under 28 U.S.C. § 1367(a). It is well settled that a federal court has discretion whether or not to exercise supplemental jurisdiction over state law claims. *See* 28 U.S.C. § 1367(c). The Supreme Court has made it clear that a court should decline to exercise jurisdiction when the sole federal claim has been dismissed. *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Additionally, it is the court's fervent belief that these claims are more appropriately handled in a state forum.

On July 1, 1999, Plaintiff filed a motion to supplement Plaintiff's memorandum of law in opposition to Defendants' motion for summary judgment. Pursuant Fed. R.Civ.P. 56(c), an adverse party may serve opposing affidavits to the motion for summary judgment one day prior to hearing. However, Rule 56 clearly indicates that "[t]he court may [but does not have to] permit affidavits to be supplemented ... by ... further affidavits." Fed.R.Civ.P. 56(e).

Because this case needs to be brought to an end, the court in its discretion declines to permit the affidavits to be supplemented. A brief review of the affidavits suggests that the supplemental material is irrelevant in light of the court's denial of Plaintiff's motion to amend to add a wrongful discharge claim.

## III. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment on Plaintiff's federal ERISA claim will be granted. The court in its discretion declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Pursuant to 28 U.S.C. § 1367(c), Plaintiff's remaining state law claims shall be remanded to the state court. *See Hansen v. Sioux By–Products,* 988 F.Supp. 1255, 1262 (N.D.Iowa 1997)

(Holding that "where the court has dismissed ... the federal claim or claims

upon which removal was premised, the statute governing the court's jurisdiction over remaining state-law claims is 28 U.S.C. § 1367(c) rather than 28 U.S.C. § 1447(c), and, as a consequence, the court has discretion either to retain jurisdiction or to remand remaining state-law claims to state court.").

A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.