Mario CANSECO; James Daniels; Manuel Delgado; Jessie Riley; Corse White-hurst, Jr., individually and on behalf of all those similarly situated, Plaintiffs–Appellants,

v.

CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA; Board of Trustees of the Construction Laborers Pension Trust for Southern California, individually and in their official capacities, Defendants–Appellees.

No. 95–55011.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 1996.

Decided Aug. 20, 1996.

Neal S. Dudovitz and Ruth M. Zacarias, San Fernando Valley Neighborhood Legal Services, Pacoima, California, Jeffrey Lewis, Sigman, Lewis & Feinberg, Oakland, California, for plaintiffs-appellants.

John S. Miller, Jr., Cox, Castle & Nicholson, Los Angeles, California, for defendants-appellees.

Before: GOODWIN and HAWKINS, Circuit Judges, and WARE,* District Judge.

MICHAEL DALY HAWKINS, Circuit Judge:

Plaintiffs-appellants, a class of retired construction workers denied retroactive pension benefits ("Retirees"), appeal the district court's grant of summary judgment in favor of defendants-appellees, the Construction Laborers Pension Trust for Southern California ("the CLPT") and the CLPT's Board of Trustees ("Trustees"). After the Trustees refused to pay the Retirees retroactive retirement benefits based on their failure to apply for those benefits, the Retirees filed suit against the CLPT and its Trustees to recover retirement benefits dating back to the time they became eligible for those benefits. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse the district court's summary judgment order because we conclude that the CLPT pension plan entitles the Retirees to retirement benefits retroactive to the date they reached age 62 and became eligible for those benefits.[1]

## FACTUAL AND PROCEDURAL HISTORY

### I. The class action suit against the CLPT and its trustees

Appellant and lead plaintiff Mario Canseco is 77 years old. For nearly 30 years, he worked in the construction industry in Southern California. In 1975, at age 56, Canseco became permanently disabled and was unable to continue working as a construction laborer. Although Canseco had worked in the industry for nearly 30 years, the 1975 CLPT records erroneously indicated that he had accumulated only 14 years and 10 months of service, just shy of the 15-year eligibility requirement for normal retirement benefits under the CLPT plan. When Canseco asked union officials whether he was eligible for pension benefits, they erroneously informed him that he was not eligible because he had not met the 15-year service minimum. Believing the CLPT records were accurate, and knowing his permanent disability would prevent him from earning additional years of service, Canseco did not apply for pension benefits under the CLPT plan.

---

* Honorable James Ware, United States District Judge for the Northern District of California, sitting by designation.

1. Appellees challenged the district court's subject matter jurisdiction below, and renew that challenge on appeal. This argument is without merit. The district court had jurisdiction pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e), which grants federal district courts jurisdiction over actions by pension plan participants seeking to recover benefits or to enforce their rights under a plan. Appellees point out that 29 U.S.C. § 1144(b)(1) excludes from jurisdiction "any cause of action which arose, or any act or omission which occurred, before January 1, 1975." We have held that a cause of action for recovery of benefits accrues at the time the benefits are denied. *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1501 (9th Cir.1984). In this case, the Trustees of the CLPT denied benefits well after January 1, 1975. Moreover, we have held that there is an "act or omission" within the meaning of § 1144(b)(1) where "benefits have been denied as the result of a significant act of discretion under or interpretation of [a pension] plan[.]" *Smith v. Retirement Fund Trust of the Plumbing, Heating and Piping Industry*, 857 F.2d 587, 590 (9th Cir.1988). Here, the Trustees denied benefits pursuant to their discretionary authority under the CLPT plan. Jurisdiction was therefore proper in the district court.

In 1987, however, the possibility of CLPT pension benefits suddenly materialized for Canseco. He received a notice from a federal district court in California informing him that he may be entitled to pension benefits as a result of a judgment in a class action suit against the CLPT plan. That judgment, contained in *Ponce v. Construction Laborers Pension Trust for Southern California*, 582 F.Supp. 1310 (C.D.Cal.1984), *aff'd*, 774 F.2d 1401 (9th Cir.1985), *cert. denied*, 479 U.S. 890, 107 S.Ct. 289, 93 L.Ed.2d 263 (1986), held that the CLPT's 15-year service requirement was arbitrary and capricious and constituted a structural defect in violation of the Taft–Hartley Act, 29 U.S.C. § 186(c)(5), and required the Trustees of the CLPT to lower the eligibility threshold from 15 years of service to 10 years. *Ponce*, 582 F.Supp. at 1318. *Ponce* established new eligibility rules for construction workers who had been illegally denied benefits because they had attained more than 10 years but less than 15 years of service. The notice informed Canseco that he might qualify for pension benefits because CLPT records indicated that he had attained between 10 and 15 years of service. Canseco promptly applied for pension benefits under the *Ponce* judgment.

The Trustees administering the *Ponce* judgment initially concluded, based on the CLPT's erroneous records of Canseco's service history, that he was eligible for *Ponce* benefits. However, after paying Canseco his initial benefits, the Trustees discovered that the records were erroneous, and that Canseco had actually accrued nearly 23 years of service before becoming disabled. Because Canseco had attained well over the 15 years required for eligibility, the Trustees concluded he had been eligible for normal retirement benefits of $988 a month beginning in 1981, when he reached age 62, the minimum age required for eligibility under the CLPT plan.

As noted above, however, Canseco had not applied for pension benefits when he turned 62 because he had been told—erroneously—that he failed to satisfy the service requirement for normal retirement benefits.

Although the Trustees concluded that Canseco had been eligible for normal retirement benefits beginning in January 1981, when he turned 62, they refused to pay him benefits retroactive to that date because—applying nearly perfect *Catch–22* logic—he had failed to apply for them. Instead, the Trustees accorded Canseco benefits retroactive only to March 1, 1985, the year after he turned 65, pursuant to Section 5.04 of the CLPT plan, which provides that benefit payments "shall commence not later than" March 1 of the year following the retiree's 65th birthday. The Trustees denied Canseco retroactive benefits, however, for the period from January 1981, when he turned 62, to March 1, 1985, the year after he turned 65.[2] Canseco appealed the Trustees' decision to the CLPT's Pension Appeals Committee, but the Committee rejected his appeal in January 1989.

In January 1992, Canseco filed a class action suit in federal district court against the Trustees and the CLPT, seeking the payment of benefits retroactive to the date the class members originally became eligible for normal retirement benefits. He sought to represent all those CLPT plan participants who, like him, had attained eligibility for normal retirement benefits but who were accorded retroactive benefits beginning March 1 of the year after they turned 65.[3] After the Retirees and the Trustees filed cross-motions for summary judgment, the district court granted summary judgment for the Trustees as to all the Retirees' claims.

The Retirees appeal the district court's summary judgment order only as to their

---

**2.** Canseco alleges lost retroactive benefits of $988 per month for 50 months, or $49,440, excluding interest.

**3.** The district court certified the following class and sub-class as to certain of Canseco's claims:

(1) the class: "[a]ll persons who are, were, or will become entitled to vested pension benefits under the ... [CLPT plan] and whose benefits entitlement date was, is or will be involuntarily set by Sections 5.03 or 5.04 of the Plan," and (2) the sub-class: "[a]ll members of the class whose pension entitlement was determined after applying for benefits under the Consent Judgment in [*Ponce*.]"

The district court reserved ruling on class certification as to the remaining claims until it had resolved the merits of those claims, which are not at issue in this appeal.

first three claims. The Retirees' first claim, which arises under 29 U.S.C. § 1132(a)(1)(B), is that the terms of the CLPT plan entitle them to retirement benefits retroactive to the date they became eligible for those benefits. Their second claim is that the Trustees' denial of retroactive benefits constituted a breach of their fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104. Finally, their third claim is that the Trustees' denial of retroactive benefits violated ERISA's non-forfeitability provision, 29 U.S.C. § 1053.

## II. The CLPT plan

Several provisions of the CLPT plan are relevant to this appeal.[4] Central to the issue of eligibility for "normal" or "regular" retirement benefits is Article 2 of the plan, which describes "Eligibility for Retirement Benefits." Section 2.02 of Article 2 establishes three alternative plans under which an employee may attain eligibility for retirement on a "Regular Pension." Section 2.02 provides:

> 2.02. *Regular Pension.* An employee shall be entitled to retire on a Regular Pension under this Plan if he satisfies all of the requirements of one of the following plans[.]

Plan Two, the plan at issue in this appeal, contains three requirements for eligibility:

> A. [Employee] has completed at least 15 years of credited service[.]
>
> B. [Employee] has attained age 62.
>
> C. [Employee] has actually worked in Covered Employment for at least 700 hours following the date with respect to which contributions are first made for him.[5]

Section 2.02.

Article 5 of the CLPT plan, entitled "Payment of Benefits," describes the pay-

ment of pension benefits. Section 5.01 of Article 5 provides:

> **Application.** An employee who meets the conditions for eligibility set forth herein shall, upon approval of an application submitted to the Board in a form satisfactory to the Board, become entitled to Pension Benefits under the Plan.

Two other sections of Article 5 describe the earliest and latest dates an eligible employee may begin to receive benefits. Section 5.03 establishes the earliest date an eligible employee may begin to receive payments, and provides, in relevant part:

> **Date of Commencement of Payment.**
>
> . . .
>
> Pension Benefits with respect to any eligible Employee shall, subject to approval of the Employee's application by the Board, commence as of the first day of the calendar month next following the month in which the applicant fills out and signs his pension application provided that such application is received by the Board not later than the 15th day of the month next following the month in which such pension application is filled out and signed. If not received by the 15th of the month, pension benefits shall commence as of the 1st day of the calendar month next following receipt by the Board of the pension application. In any event Pension Benefits shall not commence earlier than the date of the Employee's eligibility for Pension Benefits.

Section 5.03.

Section 5.04 describes the latest date an eligible employee may begin to receive benefits, providing, in relevant part:

> **Maximum Commencement Dates.**
>
> Notwithstanding anything to the contrary contained above, and unless the Employee elects otherwise, the payment of an Employee's retirement benefit shall com-

---

4. Unless otherwise noted, references are to the May 1979 CLPT plan, which was in effect at the time of the relevant actions by the CLPT Trustees. Although the CLPT plan has been amended in various respects since its enactment in 1962, it retains its original provision for a pension based on 15 years of service and attainment of age 62.

5. In 1976, the Trustees modified the CLPT plan pursuant to ERISA requirements. They created an additional category of eligibility (now known as Plan One), providing that an employee was eligible for pension benefits after only 10 years of service, and upon reaching age 65. Today, the CLPT still contains both categories of eligibility: Plan One and Plan Two.

mence not later than March 1 of the year following the calendar year in which the latest of the following events occurs: (a) The Employee's attainment of age 65. (b) The lapse of 10 years since the Employee commenced participation in the Plan. (c) The termination of the Employee's service under this or a related Plan. (d) A date later than the latest date specified in (a), (b) or (c) if the Employee elects in writing to have payment of benefits commence on such later date.

. . .

Section 5.04.

## ANALYSIS

The Retirees' first claim arises under the Employee Retirement Income Security Act ("ERISA"), which authorizes participants and beneficiaries of a pension plan to bring suit to recover the benefits to which they are entitled under the terms of that plan. 29 U.S.C. § 1132(a)(1)(B).[6] The Retirees allege that the CLPT plan entitles them, retroactively, to pension benefits for which they were eligible at age 62, but for which they failed to apply. They seek pension benefits retroactive to the date they reached age 62 and attained eligibility. The Retirees dispute the Trustees' interpretation of the CLPT plan, which states, first, that an application is a prerequisite for the receipt of benefits, and, second, that the plan does not permit retroactive payments. The district court held that the Trustees' interpretation did not "clearly conflict with the plain language of the plan" and therefore was not "arbitrary and capricious." Because we conclude reversal of the district court's summary judgment order is warranted on the basis of the Retirees' first claim, we need not reach their other two claims.

█ In actions under 29 U.S.C. § 1132(a)(1)(B) to challenge the denial of benefits based on a plan administrator's interpretation of a plan, the district court must review for abuse of discretion the benefits decisions of plan administrators and other fiduciaries to whom the plan grants "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). *Accord Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 552 (9th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 276, 133 L.Ed.2d 197 (1995). In this case, the trust agreement establishing the CLPT plan grants the Trustees discretion to construe the terms of the CLPT plan because it provides that the Trustees "shall have the power to administer the [CLPT] Fund[,]" including the power "to construe the provisions of . . . the [CLPT] Plan[,]" and that "any such construction adopted by the Board in good faith shall be binding upon any and all parties or persons affected thereby." We have construed comparable language in other plan provisions to confer interpretive discretion. *See Eley v. Boeing Co.*, 945 F.2d 276, 278 (9th Cir.1991) (describing similar plan provisions).

█ We review de novo the district court's application of the abuse of discretion standard. *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1471 (9th Cir.1993). We have equated the abuse of discretion standard with "arbitrary and capricious" review. *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1524 (9th Cir.1993).

Although ERISA creates a cause of action for plan participants and beneficiaries to enforce their rights under a plan, *see* 29 U.S.C. § 1132(a)(1)(B), the statute itself does not resolve many of the issues raised by such claims. Instead, federal courts have developed a "federal common law of rights and obligations under ERISA-regulated plans."[7]

---

6. 29 U.S.C. § 1132(a)(1)(B) allows a cause of action "to recover benefits due to [a plan participant or beneficiary] under the terms of [the] plan, to enforce [the claimant's] rights under the terms of the plan, or to clarify [the claimant's] rights to future benefits under the terms of the plan[.]"

7. The legislative history of ERISA indicates that Congress contemplated that federal courts adjudicating claims for denial of pension benefits would develop federal common law principles to govern those claims.

The ERISA Conference Report states that suits to enforce the terms of individual plans "are to be regarded as arising under the laws of the

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987) (discussing obligation of courts to develop federal common law of ERISA); *Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1499–1500 (9th Cir.1984). In the course of developing a "federal common law ... [of] ERISA-regulated plans[,]" federal courts have articulated several principles that bear on the resolution of the Retirees' claim.

## I. Interpretive principles in the federal common law of ERISA

### A. The plain language of the plan

■ A key principle guiding our resolution of the Retirees' claim is that we must look to the plain language of the CLPT plan to determine whether the Trustees' interpretation of that plan is "arbitrary and capricious." We have consistently explained that "trustees abuse their discretion if they ... construe provisions of [a] plan in a way that clearly conflicts with the plain language of the plan." *Johnson v. Trustees of the Western Conf. of Teamsters Pension Trust Fund,* 879 F.2d 651, 654 (9th Cir.1989) (citation omitted); *accord Saffle v. Sierra Pacific Power Co.,* 85 F.3d 455 (9th Cir.1996); *Eley,* 945 F.2d at 279 (citing *Johnson,* 879 F.2d at 654); *see also Menhorn,* 738 F.2d at 1500, n. 2 ("[a]ctions to recover benefits or enforce rights under the terms of a plan will typically involve the application of [ ] general principles of contract law[.]"). The question we must ask in resolving this dispute is not "whose interpretation of the plan documents is most persuasive, but whether the [Trustees'] interpretation is unreasonable." *Winters,* 49 F.3d at 553 (citation omitted).

To determine whether the Retirees are entitled to retroactive retirement benefits despite their failure to apply for benefits, we look to the CLPT plan provisions governing benefit eligibility and benefit payments. We start with Article II, which governs "Eligibility for Retirement Benefits." Section 2.02 of Article 2 provides that an employee "*shall be*

*entitled* to retire on a Regular Pension under this Plan *if he satisfies all of the requirements of one of the following plans* [.]" Section 2.02 (emphasis added). It then enumerates three requirements for eligibility under Plan Two: (1) 15 years of service, (2) attainment of age 62, and (3) 700 "covered hours" of employment. By its mandatory language ("shall be entitled"), Section 2.02 provides that these three criteria—years of service, age, and covered hours—are the sole and exclusive requirements for eligibility under the CLPT plan. Section 2.02 thus does not require an application for benefits as a condition of eligibility. Instead, Section 2.02 confers eligibility on an employee once he has satisfied the three conditions listed in Plan Two. In plain and absolute terms, Section 2.02 provides that an employee who satisfies all three requirements "*shall be entitled* to retire on a Regular Pension." (emphasis added). Section 2.02 thus guarantees normal retirement benefits to eligible employees.

Sections 5.01 and 5.03 reinforce our conclusion that an application is not a condition of eligibility under the CLPT plan. First, although Section 5.01 requires an eligible employee to submit an application to begin receiving benefit payments, it does not require an application as a condition of eligibility. On the contrary, Section 5.01 refers to employees who *already* "meet[ ] the conditions of eligibility[,]" and provides that such employees "shall, upon approval of an application ... become entitled to [p]ension [b]enefits[.]" By referring to eligible employees, Section 5.01 clearly contemplates that an employee will already have satisfied the conditions of eligibility before applying for payments to begin. Section 5.01 thus suggests that eligibility is defined elsewhere in the CLPT plan, and does not depend on the submission of an application.

Second, Section 5.03 describes the earliest date payments may commence for an "eligible [e]mployee[:]" generally the first day of

---

United States in similar fashion to those brought under Section 301 of the Labor Management Relations Act." H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess. 327, 3 ERISA Legislative History 4594. Additionally, Sen. Javits explained in a floor statement that Congress "intended that a

body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension funds." 3 ERISA Legislative History 4771.

the month after the employee fills out and signs an application, but "[i]n any event," no earlier than "the date of the Employee's eligibility for Pension Benefits." Section 5.03. Section 5.03's reference to "the date of [an] [e]mployee's eligibility" suggests that the date of eligibility is wholly independent from the date of application. Indeed, as noted above, Section 2.02 establishes that the date of eligibility is the first date all of the following are true: (1) the employee has completed 15 years of service, (2) the employee has reached age 62, and (3) the employee has worked 700 covered hours. The date an employee applies for benefits thus has no bearing on the date that employee becomes eligible for retirement benefits.

Finally, the structure of the CLPT plan reinforces our conclusion that the plan does not require an application as a condition of eligibility. Article 2 and Article 5 cover separate provisions of the plan: Article 2 governs "Eligibility for Retirement Benefits," while Article 5 governs "Payment of Benefits." The separation of these provisions into different articles of the CLPT plan indicates that *eligibility* for retirement benefits is wholly independent from the *payment* of those benefits.

We are not persuaded by the Trustees' assertion that the CLPT plan bars the retroactive payment of retirement benefits to an employee who is eligible for those benefits. Nowhere does the CLPT plan provide that an employee's failure to submit an application for benefits will result in the retroactive loss of benefits for which that employee is eligible. Although an application is required to initiate *payment* of benefits, it does not follow from this procedural requirement that the failure to apply for payment of benefits entails the complete loss of those benefits retroactively. On the contrary, the plain terms of Section 2.02 mandate that an eligible employee "*shall be entitled* to retire on a Regular Pension under this Plan *if he satisfies all of the requirements* of one of the following plans[.]" Section 2.02 (emphasis added). This mandatory language guarantees retirement benefits to employees who have met the three requirements of eligibility: service, age, and covered hours. An

employee's failure to apply for retirement benefits cannot destroy that employee's eligibility.

The Trustees construe Sections 5.01 and 5.04 to prohibit the payment of retroactive benefits. The Trustees' interpretation of these sections is not reasonable, however, since it places Sections 5.01 and 5.04 in conflict with the mandatory language of Section 2.02. Section 5.01 simply requires an employee to comply with an administrative formality—the submission of an application—in order to begin receiving payments. This procedural requirement does not prohibit the retroactive payment of benefits, however. Section 5.04 provides that the payment of benefits "shall commence" not later than March 1 of the year following the employee's 65th birthday. This section simply identifies the latest date the CLPT plan must begin disbursing benefits to an eligible employee, but it does not prevent the pension plan from disbursing retroactive benefits. As we explained above, Section 2.02, by its mandatory language, guarantees normal retirement benefits to eligible employees. The payment of benefits retroactive to the date of eligibility is necessary to preserve Section 2.02's guarantee. By construing the CLPT plan to preclude the retroactive payment of benefits to eligible employees, the Trustees strip Section 2.02 of its meaning. Such an interpretation is arbitrary and capricious.

Confronted with a similar interpretive issue, the Fourth Circuit held that a pension plan administrator could not deny an eligible plan participant retroactive benefits on the basis of that participant's failure to timely apply for those benefits. *Cotter v. Eastern Conf. of Teamsters Retirement Plan,* 898 F.2d 424 (4th Cir.1990). The facts of *Cotter* are strikingly similar to the facts of this case. The plaintiff in *Cotter,* like the Retirees in this case, failed to claim retirement benefits at the time he became eligible for them because he believed, erroneously, that he was ineligible for benefits. Cotter was employed for 20 years by the Eastern Conference of Teamsters, then retired from the Eastern Conference to work for the International Brotherhood of Teamsters. At the time he retired from the Eastern Conference and began working for the International, Cotter was in fact eligible for retirement

benefits under the Eastern Conference's pension plan. However, he did not file a claim for benefits until eight years after attaining eligibility because he believed he would not be eligible for benefits until he also retired from the International. When Cotter subsequently learned that under the pension plan, he could have received retirement benefits from the Eastern Conference during his tenure at the International, he applied for benefits retroactive to the date he attained eligibility. Because Cotter had failed to file a claim for benefits at the time he became eligible for them, however, the plan administrator refused to pay him retroactive benefits, insisting that the plan's terms required an application as a prerequisite to the receipt of benefits. Like the Retirees in this case, Cotter sued his pension plan under 29 U.S.C. § 1132(a)(1)(B), claiming that the terms of the plan entitled him to retroactive benefits and that the plan administrator had violated his fiduciary duty by denying the claim.

The Fourth Circuit in *Cotter* concluded that the plan administrator abused his discretion in denying Cotter retirement benefits retroactive to the time he became eligible for them. A key part of the court's reasoning was that the plan administrator's interpretation of the plan was unreasonable because it contravened the terms of the plan. It concluded that the plan's requirement that a participant file a claim to receive benefits was merely administrative and did not prevent the award of retroactive benefits for which the participant had attained eligibility. *Cotter,* 898 F.2d at 428.

The Trustees insist *Cotter* is distinguishable because it involved different plan language. We disagree. Although the wording of the two plans is different, the *Cotter* court relied chiefly on the structure of the plan, which resembles the structure of the CLPT plan. Like the application requirement in *Cotter,* the application requirement in the CLPT plan is contained in a portion of the plan governing the mere administration of benefits, rather than the requirements of eligibility. *Id.* To the extent that the structure of the two plans is similar, *Cotter* is instructive and reinforces our conclusion that the application requirement is merely administrative.

## B. The disfavoring of implied additional terms

■ A second interpretive principle guiding our analysis is that pension plan trustees or administrators may not construe a plan so as to impose an additional requirement for eligibility that clashes with the terms of the plan. Lower federal courts have held that where plan trustees "impose a standard [of eligibility for pension plan benefits] not required by the pension plan itself," that action " 'result[s] in an unwarranted and arbitrary construction of the [p]lan.' " *Morgan v. Mullins,* 643 F.2d 1320, 1321 (8th Cir.1981) (quoting *Maness v. Williams,* 513 F.2d 1264, 1267 (8th Cir.1975)).

We have applied this principle in the context of severance benefits and disability benefits. In *Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir.), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985), an employer denied severance benefits to several employees. The terms of the severance plan provided for severance pay when "jobs [were] 'eliminated' and 'alternative employment opportunities [were] unavailable within the [employer corporation].' " *Blau,* 748 F.2d at 1354. The employer denied severance benefits, however, because it insisted that the employees additionally needed to show that several other conditions were met, including that there were no positions available outside the corporation, *Id.* at 1354–55, and that the employees subsequently remained unemployed. *Id.* at 1355. We concluded that the employer in *Blau* was attempting to impose additional conditions of eligibility above and beyond those required by the terms of the plan, and we refused "to imply other conditions into the plan[.]" As we explained in *Blau:* "Imposition of conditions outside the plan amounts to arbitrary and capricious conduct[.]" *Id.* at 1356.

Recently, in *Saffle,* we extended this principle to disability benefits. In *Saffle,* a plan administrator denied an employee long-term benefits for "total disability." The administrator concluded that the employee did not satisfy the definition of "total disability" because medical reports concluded the employee could return to work if her job was modified to allow her to perform exclusively

sedentary work. On appeal, we rejected the administrator's interpretation of the disability plan in part because the administrator construed the plan to prohibit benefits if the employee was able to continue working with "accommodations." Such an interpretation, we concluded, would operate to "impose[ ] a new requirement for coverage": it would require the claimant to show that accommodations were futile. We rejected this implied additional term, explaining that a "[plan] administrator lacks discretion to rewrite the [p]lan." *Saffle*, 85 F.3d at 459–60 (citations omitted).

Applying this principle here, we conclude that the Trustees worked a similar abuse of discretion in interpreting the CLPT plan's application requirement as a prohibition on the payment of retroactive retirement benefits. By retroactively denying benefits to a class of workers who have indisputably earned them, the Trustees have, in effect, imposed on those workers an additional requirement of eligibility: the submission of an application for benefits. We reject such an additional requirement as inconsistent with the terms of the CLPT plan, since nothing in the CLPT plan makes an application a prerequisite for eligibility.

Based on the plain language of the CLPT plan, we conclude that the submission of an application is *not* a condition of eligibility but is merely an administrative procedure that triggers the commencement of benefit payments. As such, the application requirement cannot override the CLPT plan's mandate that an employee who "satisfies all of the requirements" of eligibility "shall be entitled to retire on a Regular Pension under this Plan[.]" Section 2.02. Although an application is required for payments to begin, this administrative requirement does not operate to strip eligible retirees of the benefits they earned upon satisfying the three requirements of Plan Two. In construing the CLPT plan to prohibit the retroactive payment of benefits for which the Retirees are indisputably eligible, the Trustees offered an interpretation of the CLPT plan that clearly conflicted with its plain language.

▇▇▇ Remand to the plan administrator is appropriate where that administrator has "construe[d] a plan provision erroneously" and therefore has "not yet had the opportuni-

ty of applying the [p]lan, properly construed, to [a claimant's] application for benefits." *Id.* at 461. On the facts of this case, however, we conclude that remand is inappropriate. Although the Trustees misconstrued the terms of the CLPT plan, remand is not necessary because "reevaluation of the merits of [the Retirees'] claim" is not required here. *Cf. Id.* Unlike cases wherein we have remanded to the plan administrator, no factual determinations remain to be made in this case. *Cf. Id.* (remanding to the plan administrator for application of correct standard for determining whether claimant had "total disability" for purposes of disability benefits); *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 951 (9th Cir.1993) (remanding to plan administrator for factual determination as to cause of claimant's disability); and *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir.1995) (remanding for reevaluation of evidence in light of new medical standard).

## II. Attorneys' Fees

▇▇▇ The Retirees seek attorneys' fees under 29 U.S.C. § 1132(g)(1) for their attorneys' work on this appeal. 29 U.S.C. § 1132(g)(1) authorizes an award of "reasonable attorney[s'] fee[s] and costs" in an ERISA action under 29 U.S.C. § 1132(a)(1)(B). We have construed this provision to include attorneys' fees and costs on appeal. *Smith v. Retirement Fund Trust of the Plumbing, Heating and Piping Industry of Southern California*, 857 F.2d 587, 592 (9th Cir.1988).

▇▇▇ The award of attorneys' fees is discretionary based on consideration of the following factors, among others: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Smith*, 857 F.2d at 592. Ordinarily, if a plan participant or beneficiary prevails in an action to enforce his rights under the plan, recovery of attorneys' fees is

610

appropriate, absent special circumstances making an award unjust. *Id.* Because the Retirees have prevailed in their appeal, and no special circumstances would make the award of fees unjust, we grant the Retirees' request for attorneys' fees.

## CONCLUSION

We conclude that the CLPT plan entitles the Retirees to retirement benefits retroactive to the date they became eligible for those retirement benefits. We therefore reverse the district court's summary judgment order and remand with instructions to enter judgment in favor of the Retirees.

We grant the Retirees' request for attorneys' fees and costs on appeal and refer the setting of the amount to the appellate commissioner.