Cari GARRISON, Plaintiff,

v.

AETNA LIFE INSURANCE COMPA-
NY; The Boeing Company Employee
Health and Welfare Benefit Plan, De-
fendants.

Case No. CV 07–3094–JFW (SSx).

United States District Court,
C.D. California.

March 31, 2008.

Frank N. Darras, Lissa A. Martinez, Shernoff Bidart Darras Echeverria, LLP, Ontario, CA, for Plaintiff.

Ronald K. Alberts, Shannon L. Victor, Gordon & Rees, LLP, Los Angeles, CA, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN F. WALTER, District Judge.

This action came on for court trial on March 11, 2008. Lissa A. Martinez and Brian Borba of Shernoff Bidart & Darras, LLP appeared for Plaintiff Cari Garrison ("Plaintiff"). Ronald K. Alberts and Shannon L. Victor of Gordon & Rees LLP appeared for Defendants Aetna Life Insurance Company and The Boeing Company Employee Health and Welfare Benefit Plan (collectively "Defendants").

After considering the evidence, briefs, and argument of counsel, the Court makes the following findings of fact and conclusions of law:

### Findings Of Fact[1]

### I. Introduction

This is an action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") for recovery of long term disability benefits

---

1. The Court has elected to issue its decision in narrative form because a narrative format more fully explains the reasons behind the

under a group long term disability plan issued by Aetna Life Insurance Company ("Aetna") for the benefit of employees of The Boeing Company ("Boeing"). On May 10, 2007, Plaintiff filed a Complaint seeking review of Aetna's cancellation of Plaintiff's long term disability ("LTD") benefits under The Boeing Company Employee Health and Welfare Benefit Plan, insured by Aetna Group Life and Long Term Disability Insurance Policy GP–728777 (the "Plan").

## II. Facts

Plaintiff commenced her employment with Boeing in 1984. Prior to her disability, Plaintiff was the Director of Supplier Management for the FCS [Future Combat Systems] Program. (AR 0072) As a benefit of her employment with Boeing, Plaintiff was eligible for long term disability insurance under a group Plan issued by Aetna. At all relevant times, Plaintiff was a participant in the Plan. Pursuant to the terms of the Plan, Aetna is the underwriter of the Plan and the Claim Fiduciary. (AR 0021, 0025)

### A. *The Plan*

After a 26 week waiting period (during which short term disability benefits are paid), the Plan provides long term disability ("LTD") benefits for a "total disability caused by a disease or accidental bodily injury." (AR 0026) The Plan defines total

disability during the first 30 months in relevant part as follows: "You are not able, solely because of injury or disease, to perform the material duties of your own occupation; except that if you start work at a reasonable occupation you will no longer be deemed totally disabled." [2] (AR 0026) The Plan then states:

> You will not be deemed to be performing the material duties of your own occupation or working at a reasonable occupation on any day if:
>
> • you are performing at least one, but not all, of the material duties of your own occupation or you are working at any occupation (full-time or part-time); and
>
> • solely due to disease or injury, your income from either is 80% or less of your adjusted predisability earnings.

(AR 0026)

"Own occupation" is not defined in the Plan. However, Aetna advised Plaintiff in a letter dated June 17, 2004, that Aetna interpreted "own occupation" to mean "your occupation as it exists in the general economy and not your specific job at Boeing. In reviewing your eligibility for LTD benefits, the issue upon which we must focus is whether or not you have the ability to perform the material duties of your own occupation with reasonable continuity for any employer in the general economy." [3] (AR 0083)

---

Court's conclusions, which aids appellate review and provides the parties with more satisfying explanations. Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is hereby adopted as a finding of fact.

2. After the first 30 months, the Plan defines total disability in relevant part as: "You are not able, solely injury or disease, because of injury or disease, to work at any reasonable occupation." (AR 0026)

3. In the Summary Plan Description ("SPD") entitled "Disability, Life, and Accident Plans", total disability is defined differently than in the Plan: "During the first 30 months of disability, your accidental injury or illness prevents you from performing the material duties of your own occupation *or other appropriate work the Company makes available.*" (emphasis added). (AR 0508) When a master plan document and SPD contain conflicting provisions, the provision more favorable to the employee controls. *See Bergt v. Retirement Plan for Pilots Employed by MarkAir, Inc.,* 293 F.3d 1139, 1145 (9th Cir.2002);

### B. *The Onset of Plaintiff's Disability*

Plaintiff had a history of back pain beginning in 1996. (AR 0457) In April of 2001, she underwent a microdiscectomy, which provided only short-term relief for her back pain. (AR 0457) After only six months, the pain returned. (AR 0457) In September 2003, Plaintiff sought treatment from Dr. David Dennis, board-certified Orthopedic Surgeon, who recommended she undergo fusion surgery due to the degenerative disc disease of her lumbar spine. (AR 0414, 0457) Before undergoing surgery, her managers at Boeing attempted to accommodate Plaintiff's condition as much as possible by holding meetings in her office, allowing her to change positions frequently, and traveling for her whenever possible. (AR 0458) On January 29, 2004, Plaintiff ceased working to undergo the back fusion surgery recommended by Dr. Dennis. (AR 0048)

In a letter dated February 3, 2004, Aetna approved Plaintiff's claim for short term disability ("STD") benefits, effective February 5, 2004. (AR 0052) Aetna ultimately paid STD benefits through July 28, 2004 (the maximum benefit period), and approved Plaintiff's claim for LTD benefits, effective July 29, 2004. (AR 0069, 0076)

### C. *Initial Description and Classification of Plaintiff's Occupation*

On February 13, 2004, shortly after Plaintiff ceased working, Plaintiff's former supervisor filled out a Physical Demand Analysis. It indicated that Plaintiff's position as a Director, Supply Management, FCS involved "continuous" (67–100% or 5.1–8 hours per day) sitting; "occasional" (1–33% or 0.5–2.5 hours per day) climbing, kneeling, lifting up to 20 pounds, pulling, reaching above shoulder level, forward reaching, carrying, bending, twisting, hand grasping, gross manipulation, standing, stooping, and walking; and 80 percent of the day on the phone and computer. Her usual work shift was 12 hours without rotation, and overtime was required. The range of accommodated hours available was 4 to 6. (AR 0056)

On February 16, 2004, Boeing faxed Aetna a job classification and description for Plaintiff's occupation. (AR 0058) Plaintiff's position as Director, Supply Management, FCS was classified by Boeing as an occupation of "Supplier Management & Procurement". (AR 0058) Boeing's description of Plaintiff's occupation stated:

> Performs responsibilities requiring the integration of disciplines from more than one supplier management and procurement job family and applies independent, specialized technical expertise to support a wide range of business objectives. Activities include, but are not limited to, the development, integration, implementation, and execution of multidisciplinary business processes. Works cross-functionally with internal and external suppliers and all employee levels to carry out responsibilities.

(AR 0058)

On May 6, 2004, Plaintiff informed Aetna that her job required travel and fourteen hour days. (AR 0666) On June 17, 2004, Plaintiff reiterated that her job re-

---

*Mitchell v. Metropolitan Life Insurance Co.,* 523 F.Supp.2d 1132, 1144 (C.D.Cal.2007). Therefore, in this case, the provision in the Plan controls, as it is more favorable to the employee than the SPD. Aetna in various letters to the Plaintiff, including the letter terminating Plaintiff's benefits, cited to a definition akin to the SPD definition of disability. (AR 0083, AR 0353) However, this does not affect the disposition of this case as Aetna only relied on the "own occupation" portion of the definition, also part of the Plan definition, when it terminated Plaintiff's benefits. (AR 0353–0356)

quired travel and fourteen hour days during Aetna's initial telephone interview with Plaintiff. (AR 0693) Plaintiff explained she "would work 14 hour days and on her last project she worked 7 months [without] a day off and would have food brought in for her. Her [occupation] required a lot of travel as well." (AR 0693)

On June 21, 2004, Aetna classified Plaintiff's occupation in the "light" category[4] based on the description in the Physical Demand Analysis. According to Aetna's records, Plaintiff's occupation "require[d] constant sitting, occasional stand[ing], walk[ing] and lifting up to 20 lbs occasionally (light level)." (AR 0698)

On June 22, 2004, Aetna again confirmed its "light" classification of Plaintiff's occupation based on the Physical Demand Analysis, Job Description, and Plaintiff's travel requirements: "Occupational [Physical Demand Analysis/Job Description] dated 2–13–04 reveal[ed] [occupation] in light category (constant sit, occasional walk, stand, stoop, kneel, carry, bend, twist. Occasional lift up to 20 pounds). Claimant advised [occupation] require[d] lots of travel." (AR 0700)

On June 28, 2004, as part of her claim documentation, Plaintiff filled out a Work History and Education Questionnaire. She described her duties as "[m]anagement of all FCS Supplier Mgmt Activities contained in numerous locations through the U.S. ... Position requires long hours, significant travel in an extremely high stress environment." She indicated that she worked 12 hours in a work day. (AR 0072)

Less than two weeks later, by letter dated July 10, 2004, Aetna informed Plaintiff that she presently met the "own occupation" definition of disability, and her claim for LTD benefits had been approved, effective July 29, 2004. (AR 0076)

On September 14, 2004, Aetna's records indicated that Boeing advised Aetna that although the Physical Demand Analysis for Plaintiff's occupation "reflects light work demands, [employee] was functioning in a sedentary capacity prior to [leave of absence]." (AR 0727) Boeing's Superintendent, stated, "accommodations are certainly available in any capacity as [employee] is a department director. She was not doing any traveling prior to [leave of absence], and would continue with no travel, no lifting, or any activity that would aggrivate [sic] her condition.... job tasks are her own office onsite with office support." (AR 0728)

### D. *Aetna's Investigation and Review of Plaintiff's Condition*

Dr. Dennis, the Plaintiff's physician, completed several Attending Physician's Statements ("APS") for Aetna from 2004 through her termination of benefits in 2006. Each advised Aetna that Plaintiff was totally disabled, had no ability to work, and was incapable of even minimal sedentary activity (mainly due to degenerative disc disease and accompanying pain symptoms). (AR 0067–0068, 0101–0102, 0198–0200) In addition, Dr. Dennis disagreed with each of Aetna's proposed Return to Work ("RTW") Plans in March

---

**4.** The "light" work category is a strength rating based on the U.S. Department of Labor's Dictionary of Occupational Titles. Plan administrators often use these ratings to classify employee occupations. "Light" work is defined as "[e]xerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work when it requires walking or standing to a significant degree." (AR 0593)

2004, June 2005, and January 2006. (AR 0115, 0125, 0196)

In March 2006, Aetna conducted a "triage" review of Plaintiff's file and medical records. (AR 0843–0844) An Aetna reviewing physician found that Plaintiff's records "[did] not support impairment in functionality" and recommended an orthopedic Independent Medical Examination ("IME"). (AR 0850)

In May 2006, Aetna arranged for an IME of Plaintiff through Elite Physicians/NMR. The IME was performed on May 16, 2006 by Dr. Mitchell Cohen. (AR 0304–0315) After reviewing Plaintiff's medical records and examining the Plaintiff, Dr. Cohen concluded that:

> It is my opinion, the patient should be able to perform a sedentary physical demand level for 8 hours a day and 40 hours a week. I can find no medical reason that would prevent this patient from doing a sedentary type of job. This is a normal activity of daily living, that most likely, she is doing at this time. She should be allowed to change position at will to avoid prolonged sitting or standing to avoid exacerbating her low back symptoms.

(AR 0314)

In addition, Dr. Cohen completed a Capabilities and Limitations Worksheet, stating that Plaintiff was capable of working only 8 hours per day and that this restriction was permanent. (AR 0316) He also indicated that Plaintiff was only capable of "occasional" sitting (1–33% or 0.5–2.5 hours per day) and could never lift 11–20 pounds or more. (AR 0316)

Aetna hired First Advantage Investigative Services and placed Plaintiff under surveillance for five days in May 2006. First Advantage reported that during the surveillance Plaintiff had been observed bending at the waist and twisting her neck, leaning into a vehicle, driving, and walking. (AR 1252, 0317–0325, 0326–0331)

**E.** *Aetna's Reclassification of Plaintiff's Occupation From "Light" to "Sedentary"*

On June 13, 2006, just three weeks before Aetna terminated Plaintiff's LTD benefits, although Aetna continued to classify Plaintiff's position as "light", it concluded that Plaintiff would be capable of sedentary work based on the IME and recent triage review. Aetna's records stated:

> [Employee's] own occupation is considered light in general economy. Recent MD review support that [employee] would be capable of performing sedentary occupation [with] ability to change position at will to avoid prolonged sitting, standing, walking. Based on IME and RMD Review.

(AR 0905)

Because the medical review indicating that Plaintiff was capable of performing sedentary work was incompatible with her job's travel requirements, on June 23, 2006, Aetna added the restriction of "no travel" to Plaintiff's capabilities and limitations. Before adding this restriction, Aetna had determined that two occupational titles from the Dictionary of Occupational Titles ("DOT") were the closest matches to Plaintiff's occupation, one of which was classified as "light" in the general economy. Specifically, Aetna's records reflected:

> After review of [employee's] job/occ, it was determined that travel was part of [employee's] description. As travel would be in the light physical demand category and [employee] restricted to sedentary per IME and RMD, would need to add restriction of no travel to [employee's] capabilities and limitations. Will fwd to [Vocational Rehabilitation Counselor] as amendment . . . . . [Claimant's] job as supply chain management director involved travel and therefore two DOT's were used to establish the

clos[est] DOT match as follows: [ ]Chief Manufacturing Engineer, [ ] Strength: Sedentary; ... Manufacturing Engineer, [ ] Strength: Light Work Demand. Therefore, [claimant's] own job has corresponding job titles as listed above as light work demand as this occupation exists in the general economy.

(AR 0915–0917)

On June 29, 2006, after discovering that Boeing had attempted to accommodate Plaintiff's job by eliminating travel, Aetna changed the classification of Plaintiff's job to sedentary in the general economy (using the alternate title from the DOT). (AR 0927–0930) As reflected in Aetna's records, Aetna then recommended termination of Plaintiff's claim on the basis of this reclassification:

> The [employee's] own occ was evaluated by [Vocational Rehabilitation Counselor]. [Employee] has reported that her own occupation required traveling which would have made her job fall into the light category. Upon [Vocational Rehabilitation Counselor] review, it was determined that [employee's] own [occupation] as it exists in the general economy is performed as a sedentary occupation w/o the essential function of traveling. The [Vocational Rehabilitation Counselor] contacted [employee's] supervisor to determine if [employee's] job could be accommodated and be performed with no traveling. [Employee's] supervisor has reported that prior to [employee's] disability claim, [employee] was performing own job in the sedentary capacity and had not been traveling. Supervisor reported that [employer] is willing to continue to provide accommodations to sedentary activity including no traveling. As [Vocational Rehabilitation Counselor] has reported that [employee's] own [occupation] in general economy is sedentary and [employer] is willing to accommodate [employee's] job to sedentary capacity, and [employee] has medically been found to be capable of performing sedentary work, I recommend termination of claim effective 06/29/06 based on [employee] not meeting definition of disability from performing own [occupation] and own job.

(AR 0929–0930)

Aetna relied on its reclassification of Plaintiff's occupation from light to sedentary (based on Boeing's accommodation of "no traveling")in its termination of Plaintiff's benefits:

> Concur [with] claim termination. Claimant's own job at Boeing was light level due to the Claimant's requirement to travel. Upon review for any [occupation][5] it was assessed that the general economy [occupation] classification for the nearest job match revealed [occupation] as sedentary. However, DA felt that due to high level [occupation] that travel (as required by own job) would seem a likely duty for other employers and if so, that would elevate [occupation] classification from sedentary to light. Medical review and IME have concluded full time sedentary capacity so it was important to clarify true [occupational] demand. This STS agreed w/DA's concern in this regard and it was decided to conduct a [labor market survey] outreach to alternate [employer's] to establish if travel is required or not for general economy [occupation] to ensure DOT class was accurate. While [labor market survey] was in process, further review of claim file revealed several contact[s] w/[employer] in the past who was willing to provide any accommodation to [employee] that would fascilitate [sic] her [return to work] ... As these accommodation confirmations were noted in the past, a current outreach was requested

---

5. The "any occupation" definition of disability is only relevant after the first 30 months.

to determine if [employer] would still accommodate and specifically for no travel. If so, claimant's job duties would be sedentary (which corresponds with general economy classification in the DOT). [Employer] confirmed with VOC on 6–28–06 that yes, they would accommodate all [limitations and restrictions] noted in medical review/IME [limitations and restrictions] and with no travel. As [employer] is able to accommodate no travel and all [limitations and restrictions], and medical supports full time sedentary capacity, claim termination at this time is supported.

(0931–0932)

F. *Aetna's Termination of Plaintiff's Benefits and Denial of Plaintiff's Appeal*

By letter dated July 5, 2006, Aetna terminated Plaintiff's benefits, effective June 29, 2006. (AR 0353–0356) As explained in its letter, Aetna terminated Plaintiff's LTD benefits because: (1) Plaintiff's job "as performed in the general economy and as can be accommodated at [her] employer" was sedentary; and (2) based on the IME, Plaintiff could work in a sedentary physical demand level for an 8 hour day (with certain restrictions and limitations). (AR 0354–0355)

On December 28, 2006, Plaintiff appealed Aetna's termination of benefits. (AR 0437–0603) As part of her appeal, Plaintiff submitted an Employability Analysis completed by Paul Broadus, M.A., a vocational "expert", that classified Plaintiff's occupation as "light", and concluded that Plaintiff was "unable to perform the material and substantial duties required by her own occupation as a Director, Supplier Management, either by her own employer, or as

performed in the national economy." (AR 0589–0594)

Plaintiff also submitted Dr. Dennis's response to the IME, dated January 3, 2007, which stated that "she has been unable to focus for any length of time that would allow her to function on a level necessary to participate in that business world with high stress, long hours, and considerable amounts of travel on a near-continuous basis." (AR 0414–0415)

In response to Plaintiff's appeal, Aetna requested a medical records review from MES Solutions.[6] Dr. David Bauer performed the review of Plaintiff's medical records for MES Solutions, and reported his findings in the "Peer Review Report" dated February 6, 2007. (AR 0420–0422) After reviewing the records and surveillance films, he stated that the IME examiner "felt that she would be able to participate in the functions of a sedentary job," and opined that the Plaintiff "does not appear to have significant functional limitations as of the date of termination, June 29, 2006." (AR 0422)

On February 9, 2007, Aetna denied Plaintiff's appeal. (AR 0434–0436) Relying on Dr. Bauer's Peer Review Report, Aetna determined that "there was no evidence of a severe impairment that would restrict Ms. Garrison from performing sedentary activity for an eight hour day." (AR 0436)

On May 10, 2007, Plaintiff filed her Complaint seeking review of Aetna's cancellation of her LTD benefits.

## Conclusions Of Law

### I. Jurisdiction And Venue

This action involves a claim for long term disability benefits under an employee

---

**6.** MES Solutions performs medical reviews for insurance companies, including Aetna, Prudential, MetLife, Cigna, and Hartford. (Bahnam Deposition, 59:18–60:6) In 2007, MES Solutions performed 1,020 medical reviews for Aetna, averaging 85 reviews per month. (Bahnam Deposition, 58:20–22)

welfare benefit plan regulated by ERISA. As such, the Court has original jurisdiction over this matter under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). *See, e.g., Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Venue in the United States District Court for the Central District of California is invoked pursuant to 29 U.S.C. § 1132(e)(2).

The parties do not dispute the facts requisite to federal jurisdiction and venue.

## II. Standard Of Review

A "denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where the plan vests such discretionary authority in the administrator or fiduciary, the Court reviews the denial of benefits under the plan for an abuse of discretion. *Id.* However, in order for the abuse of discretion standard to apply, the Plan must unambiguously grant discretion to the administrator or fiduciary. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir.1999).

In this case, the Plan provides in relevant part that:

Aetna is a fiduciary with complete authority to review all denied claims for benefits under this policy. In exercising such fiduciary responsibility, Aetna shall have discretionary authority to:

determine whether and to what extent employees and beneficiaries are entitled to benefits; and

construe any disputed or doubtful terms of this policy.

Aetna shall be deemed to have properly exercised such authority unless Aetna abuses its discretion by acting arbitrarily and capriciously.

(AR 0021) The Court concludes that the foregoing language contained in the LTD Plan unambiguously grants discretion to Aetna.

Once the Court concludes that the Plan vests discretionary authority in the administrator or fiduciary, the Court must determine whether the administrator or fiduciary is operating under a conflict of interest. Under the Ninth Circuit's *en banc* decision in *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir.2006), in which the Ninth Circuit overruled *Atwood v. Newmont Gold Co., Inc.*, 45 F.3d 1317 (9th Cir.1995), the "[a]buse of discretion [standard of] review applies to a discretion-granting plan even if the administrator has a conflict of interest." *Abatie*, 458 F.3d at 965. However, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.' Restatement (Second) of Trusts § 187, Comment d (1959)." *Firestone*, 489 U.S. at 115, 109 S.Ct. 948 (quoted in *Abatie*, 458 F.3d at 965).

Where, as here, an insurer "acts as both the plan administrator and the funding source for benefits," the insurer "operates under what may be termed a structural conflict of interest." *Abatie*, 458 F.3d at 965. Defendants in this case do not dispute that such a structural conflict exists. In the case of such a structural conflict of interest, the Court is to apply an abuse of discretion review which is "tempered by skepticism commensurate with the plan administrator's conflict of interest." *Id.* at 959. As the Ninth Circuit explained in *Abatie*:

The level of skepticism with which a court views a conflicted administrator's

decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial; fails adequately to investigate a claim or ask the plaintiff for necessary evidence; fails to credit a claimant's reliable evidence; or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

*Id.* at 968–69 (internal citations omitted).

■ "What the district court is doing in an ERISA benefits denial case is making something akin to a credibility determination about the insurance company's or plan administrator's reason for denying coverage under a particular plan and a particular set of medical and other records." *Id.* at 969. In other words, "[a] district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage." *Id.* at 968. "The district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise." *Id.* at 970.

The Court here applies a heightened level of scrutiny to Aetna's termination of the Plaintiff's benefits. The suspect timing of Aetna's decision to reclassify Plaintiff's occupation as sedentary, and Aetna's failure to credit or even consider Plaintiff's uncontradicted evidence regarding the hours her occupation required her to work,

demonstrates that Aetna's structural conflict of interest affected its decision. *Cf. Lundquist v. Continental Casualty Co.,* 394 F.Supp.2d 1230, 1248–1251 (C.D.Cal. 2005) (finding that a conflict of interest affected Defendant's decision to deny benefits where defendant mis-classified and/or minimized plaintiff's job responsibilities).

### III. Discussion

An ERISA administrator abuses its discretion in terminating LTD benefits, when it "construes provisions of the plan in a way that conflicts with the plain language of the plan." *Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan,* 410 F.3d 1173, 1178 (9th Cir.2005). Aetna abused its discretion in terminating Plaintiff's LTD benefits because, in conflict with the plain language of the Plan, it (1) relied on Boeing's accommodation of "no traveling"; and (2) erroneously determined Plaintiff could work at her "own occupation" with an 8 hour work day.

> A. *Aetna Abused Its Discretion By Relying on Boeing's Accommodation of "No Traveling" in Terminating Plaintiff's Benefits.*

In *Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan,* the Ninth Circuit found that a plan administrator "abused its discretion by erroneously factoring 'accommodation' into the criteria for total disability." 85 F.3d 455, 460 (9th Cir.1996). There, the plan administrator did not consider the employee disabled from her "mostly sedentary" job because "she [was] seated at least 80% of the time in her regular job as Customer Services Clerk, and 'a position [was] available to enable her to work with her feet elevated.'" *Id.* at 457. The definition of disability in the plan did not use any language regarding accommodation, but depended on whether the claimant

could perform the duties of her "regular occupation." *Id.* at 459. The Ninth Circuit held that the plan administrator's consideration of the employee's ability to work with accommodations was "inconsistent with the plain language of the Plan and [was] inconsistent with the Plan's two-tiered disability structure because it collapse[d] the threshold for occupational disability into the standard for general, or permanent disability." *Id.* at 459.

■ Similarly, the Plan here does not include any language allowing the consideration of accommodation. Aetna's two-tiered disability Plan defines total disability during the first 30 months in relevant part as follows: "You are not able, solely because of injury or disease, to perform the material duties of your own occupation; except that if you start work at a reasonable occupation you will no longer be deemed totally disabled." (AR 0026) The Plan does not refer to accommodation; instead, the evaluation of LTD benefits depends on whether the Plaintiff can perform the material duties of her own occupation. Notwithstanding the absence of any reference to accommodation in the Plan, Aetna clearly relied on accommodation in determining that Plaintiff was not "totally disabled" under the Plan. Specifically, Aetna reclassified Plaintiff's position from "light" to "sedentary", only after considering Boeing's accommodation of "no traveling" to assist with her back pain, and relied on this reclassification in deciding to terminate Plaintiff's benefits. (AR 0905, 0915–0917, 0929–0930, 0931–0932, 0354–0355)

Defendants argue that *Saffle* is inapplicable to this case because Plaintiff was actually performing her occupation at Boeing with accommodations *prior* to her disability leave. Defendants rely on the Seventh Circuit's decision in *Ross v. Indiana State Teacher's Association Insurance Trust,* 159 F.3d 1001 (7th Cir. 1998), where the court found no abuse of discretion based on the plan administrator's consideration of accommodations. The Seventh Circuit distinguished *Saffle,* stating: "The problem in *Saffle* with the accommodations that were considered was that they were essentially outside of the realm of Saffle's regular job and therefore were at odds with the policy language at issue. Moreover, the accommodations in that case do not appear to have been actually offered to Saffle." *Ross,* 159 F.3d at 1012. The Court finds that *Ross* is readily distinguishable from this case because the accommodations in *Ross* were relatively minor and primarily limited to physical adjustments to the plaintiff's work space to accommodate his degenerative hip condition. *See id.* at 1006. The "no traveling" accommodation provided by Boeing, and relied on by Aetna, more closely resembles the accommodations in *Saffle* because it materially changed the character of Plaintiff's work. *See Bona v. MetLife Disability Ins. Co.,* 2004 WL 5582870, *6, 2004 U.S. Dist. LEXIS 754, *18 (N.D.Cal. Jan. 20, 2004) (finding an abuse of discretion where the administrator relied on a DOT classification that did not include business travel, a major part of claimant's actual duties).

More importantly, the Court finds the fact that Boeing had actually provided the accommodation to the Plaintiff irrelevant, because it was offered in direct response to Plaintiff's disability symptoms. Defendants should not be able to reclassify or redefine Plaintiff's occupation based on her capabilities while suffering from the condition that led to her disability leave. To do so is inconsistent with the plain language of the Plan, and is inconsistent with the Plan's two-tiered disability structure. As the court stated in *Bona v. MetLife Disability Insurance Co.*:

> Defendants argue … that the Court should only consider Plaintiff's *post-disability* accommodated employment posi-

tion, noting that in that position Plaintiff had ceased traveling and reduced the number of days per week that she worked.... Defendants thus attempt to reclassify Plaintiff's job to the level of performance of which Plaintiff was capable while suffering from symptoms [of her disability]. This argument is inconsistent with applicable law. Defendants point to no language in the Policy that permits Defendants to reclassify Plaintiff's position to reflect accommodations made as a direct result of her disability, and the Court can find none.

2004 WL 5582870, *7, 2004 U.S. Dist. LEXIS 754, *20 (N.D.Cal. Jan. 20, 2004) (internal citations omitted).

Accordingly, Aetna abused its discretion by relying on Boeing's accommodation of "no traveling" in terminating Plaintiff's LTD benefits.

### B. Aetna Abused its Discretion in Determining Plaintiff Could Work at her "Own Occupation" With an 8 Hour Work Day

Prior to her disability leave, the evidence is undisputed that Plaintiff usually worked 12–14 hours per day. (AR 0056, 0072, 0458, 0666, 0693). Yet, when Aetna terminated Plaintiff's benefits, the evidence is also undisputed that Plaintiff was only capable of working 8 hours per day. Moreover, the IME that Aetna relied on to terminate Plaintiff's benefits explicitly and permanently restricted Plaintiff to an 8 hour day. (AR 0316)

In terminating Plaintiff's claim, Aetna failed to consider and did not even refer to the discrepancy between Plaintiff's usual hours and the eight hour restriction placed on Plaintiff's work day by the IME.[7] In the termination letter dated July 5, 2006, Aetna simply noted that Plaintiff could work

in a "sedentary physical demand level" for an eight hour day based on the IME, and summarily concluded that Plaintiff's medical condition would not prevent her from performing her own occupation. (AR 0353–0356)

 Aetna abused its discretion by failing to consider this discrepancy, and thereby construing the Plan's definition of total disability to exclude persons who could work a full-time, or forty hour work week. *See Rosenthal v. The Long–Term Disability Plan of Epstein, Becker & Green, P.C.,* 1999 WL 1567863 (C.D.Cal. Dec. 21, 1999) (finding an abuse of discretion where administrator terminated LTD benefits because the plaintiff could work 40 hours per week, but her own occupation as trial attorney required her to work 40–70 hours per week). The Plan's definition of total disability does not include any reference to the performance of an 8 hour day or 40 hour week, but speaks solely in terms of whether Plaintiff is precluded from performing the material duties of her own occupation. (AR 0026) *See Rosenthal,* 1999 WL 1567863, at *9.

In addition, as already discussed in relation to Boeing's "no traveling" accommodation, Aetna abused its discretion by relying on the "hours" accommodation that may have been provided by Boeing. "The policy's definition of total disability is not the same as inability to perform the essential duties of a class of occupations as modified to accommodate injury, ... *particularly* when there is no evidence that Plaintiff's own occupation can be so modified." *Frei v. Hartford Life Ins. Co.,* 2006 WL 563051, *8 (N.D.Cal. Mar. 7, 2006) (emphasis added).

---

**7.** Moreover, Defendants made no attempt in their trial briefs or at trial to explain the

discrepancy.

Here, finding an abuse of discretion is warranted *particularly* because there is no evidence that Plaintiff's own occupation could be modified to be performed in 8 hours. The Physical Demand Analysis filled out by Plaintiff's supervisor indicated that Plaintiff's "usual work shift" was 12 hours, and that overtime was "required." (AR 0056) While the Physical Demand Analysis noted that the "range of accommodated hours available" was 4–6, it is meaningless, as overtime was "required." The Court concludes that Plaintiff, like the trial attorney in *Rosenthal,* "must be available to work for as long as necessary to meet the demands" of her job. *Rosenthal,* 1999 WL 1567863 at *8. She "simply cannot walk out of her office . . . when her 8 hour day ends." *Id.*

Finally, Aetna abused its discretion by simply ignoring that Plaintiff usually worked 12–14 hours per day, and instead relied on an 8 hour work day to justify its termination of Plaintiff's benefits. *See Taft v. Equitable Life Assur. Soc.,* 9 F.3d 1469, 1473 (9th Cir.1993) ("[A]n administrator also abuses its discretion if it relies on clearly erroneous findings of fact in making benefit determinations.").

Accordingly, Aetna abused its discretion by determining Plaintiff could perform her "own occupation" with an 8 hour work day.

C. *Remand is Not Warranted to Determine Whether Plaintiff is Totally Disabled From Her Own Occupation*

■ Remand is generally appropriate when a ERISA plan administrator has misconstrued the Plan and applied a wrong standard to a benefits determination. *Saffle,* 85 F.3d at 461. However, the Court concludes that under the factual circumstances of this case remand is not appropriate, as no additional factual determinations remain to be made to evaluate the merits of Plaintiff's claim. *See Canseco v.*

*Construction Laborers Pension Trust,* 93 F.3d 600, 609 (9th Cir.1996)(finding remand inappropriate even though the plan administrator misconstrued the terms of the plan, because "no factual determinations remain to be made").

The evidence demonstrates (and Aetna conceded at trial) that Plaintiff's own occupation is classified as light if consideration of Boeing's accommodation is not allowed. (AR 0698, 0700, 0905) Yet, as the evidence demonstrates, Plaintiff could only perform sedentary work. (AR 0314, 0915) On this basis, Plaintiff is entitled to benefits.

Furthermore, the evidence demonstrates that Plaintiff could work no more than 8 hours a day. (AR 0316) Yet, as the evidence demonstrates, Plaintiff's job required her to work at least 12 hours a day, and overtime was required. (AR 0056) On this basis, Plaintiff is entitled to benefits. *See Rigg v. Continental Casualty Co.,* 2004 U.S. Dist. Lexis 8009, *19–20 (N.D. Cal May 5, 2004)(finding remand inappropriate where undisputed record showed Plaintiff could work no more than 30 hours a week, but her job required her to work 45–50 hours per week).

## IV. Conclusion

For all of the foregoing reasons, the Court finds in favor of Plaintiff. Aetna is ordered to pay Plaintiff's outstanding LTD disability benefits for the entire 30 month period covered by the "own occupation" provision of the Plan. The Court expresses no opinion concerning Aetna's obligation, if any, for benefits under the "any occupation" provision of the Plan.

The Court orders the parties to meet and confer and agree on a Judgment which is consistent with the Court's Findings of Fact and Conclusions of Law. The parties shall lodge the Judgment with the Court on or before April 14, 2008. In the unlikely event the parties are unable to agree

upon a Judgment, the parties shall each submit separate versions of a Judgment along with a declaration outlining their objections to the opposing party's version no later than April 14, 2008.